CITIES SERVICE GAS COMPANY, a corporation whose corporate name has been changed to Williams Natural Gas Company; Colorado Interstate Gas Company, a corporation; El Paso Natural Gas Company, a corporation; Kansas–Nebraska Natural Gas Company, Inc., a corporation whose corporate name has been changed to KN Energy, Inc.; Michigan Wisconsin Pipeline Company, a corporation; Natural Gas Pipeline Company of America, a corporation; Northern Natural Gas Company a division of Internorth, Inc., a corporation; Panhandle Eastern Pipeline Company, a corporation; and Transwestern Pipeline Company, a corporation, Appellants,

v.

OKLAHOMA TAX COMMISSION, Appellee.

No. 70127.

Supreme Court of Oklahoma.

May 2, 1989.

Lee B. Thompson, William J. Legg, S. Paul Hammons, Andrews, Davis, Legg, Bixler, Milsten & Murrah, Oklahoma City, for appellants.

Bryce A. Baggett, Oklahoma City, for appellee.

KAUGER, Justice.

The issue presented is whether the Oklahoma Conservation Excise Tax is unconstitutional under either the United States and Oklahoma Constitutions. Specifically, the appellants/pipeline companies allege that the Oklahoma's Conservation Excise Tax violates the Commerce Clause, the Supremacy Clause, the Equal Protection Clause, the Due Process Clause, the Privileges and Immunities Clause and is contrary to the Fifth and Fourteenth Amendments of the Constitution of the United States and violates the Okla. Const., art. 2, §§ 2, 6, 7, 23 and 24.[1] We find that: 1) The conservation excise tax is consistent with the Commerce Clause,[2] Due Process Clause and the Equal Protection Clause.[3] It is fairly apportioned, does not discriminate against interstate commerce, and is fairly related to services which the state provides to the taxpayer. 2) The conservation excise tax neither conflicts with the Federal Natural Gas Act, the Supremacy Clause,[4] nor the authority of the Federal Energy Regulatory Commission under 15 U.S.C. § 3320 (1978).[5]

## FACTS

The appellants, interstate pipeline companies, buy natural gas in Oklahoma for re-

---

1. The parties briefed only the issued involving the Commerce Clause, the Due Process Clause, the Equal Protection Clause, and the Supremacy Clause of the United States Constitution.

2. The Commerce Clause, United States Const., Art. I, § 8, provides:
   "The Congress shall have Power ... To regulate Commerce with foreign Nations, and among the several States, and with the Indian Tribes;

3. The United States Const., amend. XIV, § 1, provides in pertinent part:
   "... nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws."
   The Okla. Const., art. 2, § 7 provides:
   "No person shall be deprived of life, liberty, or property, without due process of law."

4. The Supremacy Clause, United States Const. Art. VI, provides in pertinent part:
   "... This Constitution, and the Laws of the United States which shall be made in Pursuance thereof; and all Treaties made, or which shall be made, under the Authority of the United States, shall be the supreme law of the Land; and the Judges in every State shall be bound thereby, any Thing in the Constitution or Laws of any State to the Contrary notwithstanding."

5. Treatment of state severance tax, 15 U.S.C. § 3320 (1978), provides:
   "(a) Allowance for State severance taxes and certain production-related costs. Except as provided in subsection (b) of this section, a price for the first sale of natural gas shall not be considered to exceed the maximum lawful price applicable to the first sale of such natural gas under this part if such first sale price exceeds the maximum lawful price to the extent necessary to recover.
   (1) State severance taxes attributable to the production of such natural gas and borne by the seller, but only to the extent the amount of such taxes does not exceed the limitation of subsection (b) of this section; and
   (2) any costs of compressing, gathering, processing, treating, liquifying, or transporting such natural gas, or other similar costs, borne by the seller and allowed for, by rule or order, by the Commission.
   (b) Limitation on State severance taxes. The State severance tax allowable under subsection (a)(1) of this section with respect to the production of any natural gas may not include any amount of State severance taxes borne by the seller which results from a provision of State law enacted on or after December 1, 1977, unless such provision of law is equally applicable to natural gas produced in such State and delivered in interstate commerce and to natural gas produced in such State and not so delivered.
   (c) Definition of State severance tax. For purposes of this section, the term 'State severance tax' means any severance, production, or similar tax, fee, or other levy imposed on the production of natural gas
   (1) by any State or Indian tribe (as defined in section 3316(b)(2)(B)(ii) of this title); and
   (2) by any political subdivision of a State if the authority to impose such tax, fee, or other levy is granted to such political subdivision under State law."

sale outside the state. After the natural gas from producing wells is placed in the pipeline, it flows steadily and continuously through the states in which the pipelines and compressor facilities are located. The pipeline companies have paid, under protest, the conservation excise tax. Although the tax is levied on the producers, the pipeline companies have agreed to pay the tax. The pipeline companies brought this action in the district court alleging that the conservation excise tax violated the Commerce Clause, the Supremacy Clause, the Equal Protection Clause, and the Due Process Clause. They also sought a refund of the taxes which they paid under protest. The trial court found that the tax neither violated the United States Constitution nor the Oklahoma Constitution. The pipeline companies appeal this ruling.

## THE TAX AND ITS HISTORY

In 1977, the legislature enacted the conservation excise tax which levied a tax on the act of severance.[6] The levy is imposed on all natural gas and/or casinghead gas produced, and it includes both working and royalty interests. Liability for the tax attaches to the producers and/or royalty owners creating a first lien on their real and personal property. If a producer is reimbursed by the pipeline company for the tax, the remittance of the tax by the pipeline company is to the Oklahoma Tax Commission and not to the producer. Should the pipeline company fail to remit, the requirement that the pipeline company remit that portion of the tax which has been reimbursed to the producer does not release the producer from tax liability. The amount of tax is calculated at seven cents on each thousand cubic feet (MCF) of produced gas, less seven percent of the gross value of that MCF of produced gas. The levied tax cannot exceed one-third of the gross value of each such MCF of produced gas, and the levied tax cannot be less than zero.[7]

6. The Legislative intent is expressed in 68 O.S. 1981 § 1107, which provides:
"It is hereby declared the intent of the Legislature to levy a conservation tax on the severance of natural gas and/or casinghead gas to be used for the following purposes:
1. To provide funds for energy conservation or energy research programs for Oklahoma;
2. To provide funds for unfunded liabilities of public retirement systems; and
3. To provide funds for the general government of the State of Oklahoma.

7. The conservation excise tax statute, 68 O.S. 1981 § 1108, provides in pertinent part:
A. There is hereby levied on all natural gas and/or casinghead gas produced and saved, excluding nontaxable royalty, a conservation excise tax of seven cents ($0.07) per thousand (1,000) cubic feet (MCF), less seven percent (7%) of the gross value of each such MCF of natural gas and/or casinghead gas; provided that the conservation excise tax hereby levied shall not exceed one-third (⅓) of the gross value of each such MCF of the natural gas and/or casinghead gas so produced and saved. Provided further, the conservation excise tax herein levied shall never be less than zero....
C. The purchaser of the natural gas and/or casinghead gas shall remit that portion of the tax for which the producer and/or the royalty owner is reimbursed by the purchaser. The producer and/or royalty owner shall remit that portion of the tax for which he is not reimbursed by the purchaser. If any purchaser, producer and/or royalty owner so elects, he may remit the share of conservation excise tax due hereunder from other interst owners which is not reimbursed by the purchaser. The tax levied by this section shall be due at the end of any month in which the accrued total due from the remitter reaches One Hundred Thousand Dollars ($100,000.00); however, the tax due shall not be required to be remitted more frequently than once per calendar month. The tax will be considered delinquent forty-five (45) days after it becomes due. A remitter whose total tax due fails to reach One Hundred Thousand Dollars ($100,-000.00) during any calendar year shall remit the taxes accrued for that year by February 1 of the year following accrual...."
The liability for the tax is provided in 68 O.S. 1981 § 1110, which provides:
"The tax herein levied shall attach to and is the liability of the working-interest and royalty-interest owners' interests in all natural gas and/or casinghead gas produced and saved in the State of Oklahoma. In addition, the tax herein levied shall, at all times, be and constitute a first and paramount lien against the producer's and/or royalty owner's property, both real and personal. Moreover, the provisions herein requiring the purchaser of the natural gas and/or casinghead gas to remit that portion of the tax for which the producer and/or royalty owner is reimbursed by the purchaser shall not release the producer and/or royalty owner from liability to pay the

Under the calculating formula, the seven cents is offset when the gross value of the MCF of produced gas reaches one dollar. The restriction of one-third of the gross value comes into play when the gross value of the MCF of produced gas is seventeen and one-half cents. The levied tax operates on the production of gas having a gross value per MCF between one dollar and seventeen and one-half cents. The amount of tax increases as the value of produced gas decreases.[8]

## THE CONSERVATION EXCISE TAX DOES NOT VIOLATE THE COMMERCE CLAUSE, DUE PROCESS CLAUSE, OR THE EQUAL PROTECTION CLAUSE. IT IS FAIRLY APPORTIONED, DOES NOT DISCRIMINATE AGAINST INTERSTATE COMMERCE, AND IS FAIRLY RELATED TO SERVICES WHICH THE STATE PROVIDES TO THE TAXPAYER.

The United States Constitution, Art. I, § 8, provides that Congress shall have the power "to regulate Commerce with foreign Nations, and among the several States, and with the Indian Tribes". The pipeline companies contend that our decision in *Post Oak Oil Co. v. Oklahoma Tax Commission*, 575 P.2d 964 (Okla.1978), which upheld that the constitutionality of the conservation excise tax and the corresponding tax credit under the Commerce Clause, is not dispositive because the United States Supreme Court opinions relied on in *Post Oak* are no longer controlling. In essence, the pipeline companies' position is that: Oklahoma does not have an inherent right to tax the intrastate severance of natural gas which may ultimately enter interstate commerce; the right to tax depends on federal leave; and if the tax can be interpreted to hamper or hinder commerce between the states, it is prohibited.

The pipeline companies contend that the United States Supreme Court expressly disapproved the *Post Oak* reasoning in *Oliver Iron Mining Co. v. Lord*, 262 U.S. 172, 43 S.Ct. 526, 67 L.Ed. 929 (1923). We do not agree. Rather the Court in *Commonwealth Edison Co. v. Montana*, 453 U.S. 609, 617, 101 S.Ct. 2946, 2953, 69 L.Ed.2d 884, 894 (1981), *reh'g denied*, 453 U.S. 927, 102 S.Ct. 889, 69 L.Ed.2d 1023 (1981), determined that state severance taxes are not exempted from Commerce Clause examination by a claim that the tax is imposed on goods prior to their entry into the stream of interstate commerce. (Nevertheless, the Court noted that *Heisler v. Thomas Colliery Co.*, 260 U.S. 245, 43 S.Ct. 83, 67 L.Ed. 237 (1922) and its progeny were not wrongly decided.) In those decisions since *Oliver*, the United States Supreme Court, has moved away from the immunity per se rule which prevented state taxation of interstate commerce.[9] Instead, the present rule is one of accommodation recognizing that if interstate commerce utilizes the services and protections of a state it is required to pay its own way.[10] For this reason, the United States Supreme Court has allowed state taxation encroachments upon interstate commerce if there are local incidents which justify the taxation.[11]

■ Local occurrences, which are severable from interstate commerce but which occur within a state, were recognized in *Complete Auto Transit, Inc. v. Brady*, 430 U.S. 274, 97 S.Ct. 1076, 51 L.Ed.2d 326 (1977), *reh'g denied*, 430 U.S. 976, 97 S.Ct. 1669, 52 L.Ed.2d 371 (1977). *Complete Auto* involved the taxation of a motor carrier which transported out-of-state man-

same, in all cases where such tax fails to be remitted by the purchaser."

**8.** *Post Oak Oil Co. v. Okla. Tax Comm'n*, 575 P.2d 964, 967 (Okla.1978).

**9.** *Leloup v. Port of Mobile*, 127 U.S. 640, 646, 8 S.Ct. 1380, 1383, 32 L.Ed. 311, 313 (1887). See also, Hellerstein, "State Taxation and the Supreme Court: Toward a More Unified Approach to Constitutional Adjudication?", 75 Mich.L.Rev. 1426, 1443 (1977).

**10.** *Colonial Pipeline Co. v. Traigle*, 421 U.S. 100, 108, 95 S.Ct. 1538, 1543, 44 L.Ed.2d 1, 8 (1975); *Western Live Stock v. Bureau*, 303 U.S. 250, 254, 58 S.Ct. 546, 548, 82 L.Ed. 823, 827, 115 A.L.R. 944, 948 (1938). `See also Levmore, "Interstate Exploitation and Judicial Intervention, 69 Va.L. Rev. 563, 592–93 (1983).

**11.** *Norton Co. v. Dept. of Revenue*, 340 U.S. 534, 539, 71 S.Ct. 377, 381, 95 L.Ed. 517, 521 (1951).

ufacturer's automobiles between points in the state. *Complete Auto* noted that interstate commerce may be made to pay its way, and that the permissibility of state taxation is based upon its actual effect rather than its legal terminology. The United States Supreme Court set forth a four pronged test:

1) Whether the tax is applied to an activity with a substantial nexus with the taxing state;

2) Whether it is fairly apportioned;

3) Whether the tax discriminates against interstate commerce and;

4) Whether the tax is fairly related to the services provided by the state.

These standards must be used to decide whether the state taxes on interstate commerce are permissible under the United States Constitution.

In *Commonwealth Edison Co., supra,* the United States Supreme Court permitted state taxation of interstate commerce. Montana levied a severance tax on each ton of coal mined in the state, including coal mined on federal land. The tax was assessed at differing rates depending on the value, energy content, and means of extraction of the coal, and could equal, at a maximum, 30% of the contract sales price. The Court found that Montana could constitutionally raise general revenue by imposing a severance tax on coal mined in the State. The entire value of the coal, before transportation, originated in the State; and mining of the coal depleted the resource base and wealth of the state, thereby decreasing a future source of taxes and economic activity. The Court further found that if, as here, a general revenue tax does not discriminate against interstate commerce, and if it is apportioned to activities occurring within the state, the state is free to pursue its own fiscal program. However, the practical application of a tax the state has exacted must be related to the opportunities which it has given, and to the benefits which it has conferred by being an orderly, civilized society. Thus, the Court

found a nexus, a proper apportionment, and a rational relationship between the income attributed to the state and the interstate values of the enterprise.

In *Goldberg v. Sweet,* —— U.S. ——, 109 S.Ct. 582, 102 L.Ed.2d 607 (1989),[12] Illinois had imposed a 5% tax on the gross charges of interstate telecommunications originated or terminated in the State and charged to an Illinois service address. The United States Supreme Court found that the tax was fairly apportioned, that it did not discriminate against interstate commerce, and that it was fairly related to services which the state of Illinois provided to the taxpayer.

### A.

### WHETHER THE TAX IS APPLIED TO AN ACTIVITY WITH A SUBSTANTIAL NEXUS WITH THE TAXING STATE.

*Commonwealth Edison* and *Goldberg* stand for the proposition that the United States Supreme Court permits states to tax products in interstate commerce once the four prong test of *Complete Auto* has been met. Obviously, the only and substantial nexus of the severance of natural gas is in Oklahoma.

### B.

### WHETHER THE TAX IS FAIRLY APPORTIONED.

■ The pipeline companies argue that the apportionment is unequal because the Oklahoma income tax code provides for a tax credit. Apportionment as used in *Complete Auto,* means that the tax is assessed only on the portion of activity in the taxing state with slight or no possibility that multiple taxation will occur. In this case, Oklahoma is the only state which can tax the severance, and it taxes only the natural gas actually severed. The pipeline companies contend that the tax discriminates against interstate commerce because under

**12.** On April 3, 1989, the United States Supreme Court again appled the *Complete Auto* test in *Amerada Hess Corp. v. Director,* (87–453) ——

U.S. ——, 109 S.Ct. 1617, 104 L.Ed.2d 58 (1989), which involved New Jersey's business corporation tax.

the tax formula 80% of the gas taxed is piped to other states. However, like *Commonwealth Edison*, the tax is computed at the same rate regardless of the final destination of the gas. There is no suggestion that the tax is administered in a manner departing from this evenhanded formula. Therefore, the tax is not discriminatory.

## C.

### WHETHER THE TAX DISCRIMINATES AGAINST INTERSTATE COMMERCE.

The pipeline companies argue that while the tax is facially non-discriminatory, when it is coupled with the tax credit provided under 68 O.S.1981 § 2357,[13] it becomes overtly discriminatory. In *Post Oak*, the Court found that: 1) only the royalty and working interest owners were liable for the tax; 2) only royalty and working interest owners could receive credit for the actual payment of the conservation excise tax; and 3) if the royalty and working interest owners were reimbursed by the purchasers for resale, or if the tax were passed through to a consumer, no tax credit would be allowed. The basis for the holding here is that the pipeline companies are not taxpayers—they are resale purchasers who voluntarily contracted to buy gas and to pay taxes.

■ If the pipeline companies fail to pay the taxes, they have no liability for failing to do so. Rather, the royalty and working interest owners must pay the severance tax. The Commission has a cause of action for failure to pay severance taxes against the royalty and working interest owners, not against the purchaser. The only action which might be brought against the pipeline companies would be one by the royalty and working interest owners for breach of contract. There is no discrimination against the pipeline companies because their status as purchaser does not, in the absence of a contract so providing, either obligate them to pay the tax, or define them as an entity from whom taxes are due under 68 O.S.1981 § 1110.[14]

The pipeline companies contend that *Maryland v. Louisiana*, 451 U.S. 725, 101 S.Ct. 2114, 68 L.Ed.2d 576 (1981), which was decided after *Post Oak* is controlling. However, *Maryland* is readily distinguishable. There, Louisiana imposed a first use tax on off-shore oil which was extracted from the outer continental shelf and piped to refining plants in Louisiana. First use taxes were levied on all natural gas which was imported into Louisiana which had not been previously taxed by another state. A corresponding tax credit was given to purchasers who used the gas in state. The United States Supreme Court found the first use tax and corresponding tax credit discriminatory. The Court's holding was premised on the finding that the first use tax was not a compensatory tax.

■ A compensatory tax is one which is imposed by the state as the result of identifying a burden on the state which can be offset, to some extent, by levying a tax. The Court's example of a compensatory tax was a severance tax—a state has an interest in the severance of natural resources from its soil. The first use tax in *Mary-*

---

**13.** The tax credit statute, 68 O.S.1981 § 2357(D)(1), provided in pertinent part:

"D. 1. There shall be allowed as a credit against the tax imposed by Section 2355 of this title the excise taxes levied by the state on ... natural gas or casinghead gas ... where the combined total of such taxes amounts to more than seven and eighty-five one-thousandths percent (7.085%) of the gross value of production of the ... gas ... produced, ..." This credit is no longer allowed in § 2357 which was amended in 1987. The only natural gas credit allowed is the following:

"C. 1. Every taxpayer who operates a manufacturing establishment in the state shall be allowed a direct credit against income taxes owed by such taxpayer to the state, the amount of which credit shall be proportioned to the amount of gas used or consumed in Oklahoma by such taxpayer in the operation of a manufacturing establishment, at a rate of three (3) mills per thousand (1,000) cubic feet of gas used or consumed after May 1, 1971, and during each taxable year of such taxpayer provided that the credit allowed herein shall not apply to the first twenty-five thousand (25,000) MCF of gas used or gas used to generate electricity or consumed after May 1, 1971, and during each taxable year of such taxpayer...."

**14.** See note 7, supra.

*land* was found to be a noncompensatory tax on the basis that Louisiana did not have a sovereign interest in receiving reparation for the severance of resources from the federally owned outer continental shelf. However, Oklahoma has a sovereign interest in being recompensed for the severance of natural resources from its native soil. The *Commonwealth Edison* teaching is that the Commerce Clause does not give the inhabitants of one state a right to control either the terms of resource development or resource depletion in a sister state.

## D.

### WHETHER THE TAX IS FAIRLY RELATED TO THE SERVICES PROVIDED BY THE STATE.

■ The fourth prong of the *Complete Auto* test is whether the activity is related to services provided by the state. The pipeline companies contend that the tax is not a severance tax, but rather a tax on the privilege of purchasing or taking gas in Oklahoma. Like the parties in *Commonwealth Edison,* the pipeline companies have miscomprehended the essence of the fourth prong of the test. The tax need not reimburse the state for the cost of specific services dispensed to the natural gas industry. The Legislature stated that its intention was to use the tax to provide funds for energy preservation or energy research programs, for unfunded debts of public retirement systems, and for the general government of the state.[15]

The pipeline companies would severely limit this test by focusing solely on those services which Oklahoma provides to natural gas activity located within the state. However, the tax which may be imposed on a particular interstate transaction need not be confined to the cost of the services incurred by the state on account of that activity. On the contrary, both *Commonwealth Edison* and *Goldberg* acknowledge

that interstate commerce may be required to contribute to the cost of providing all governmental services, including those services from which it arguably receives no direct benefit.[16] The fourth prong of the Complete Auto test thus focuses on the wide range of benefits provided to the taxpayer, not just the precise activity connected to the interstate activity at issue. A taxpayer's receipt of police and fire protection, the use of public roads, and the other advantages of civilized society satisfy the requirement that the tax be fairly related to benefits provided by the State to the taxpayer.[17]

■ We hold that the conservation tax does not violate the Commerce Clause, Due Process Clause, or the Equal Protection Clause. It is fairly apportioned, it does not discriminate against interstate commerce, and it is fairly related to services which the state provides to the taxpayer.

## II.

### THE CONSERVATION EXCISE TAX IN THE PRESENT CASE IS NOT IN CONFLICT WITH THE NATURAL GAS ACT, THE SUPREMACY CLAUSE, OR THE AUTHORITY OF THE FEDERAL COMMISSION UNDER 15 U.S.C. § 3320 (1978).

The pipeline companies allege that the conservation excise tax violates the Supremacy Clause of the United States Constitution. They argue that the tax is an attempt by the Oklahoma Legislature to interfere with the Federal Energy Regulatory Commission's exclusive authority to regulate interstate transportation and the sale of natural gas. We disagree.

■ Congress has the power under the Supremacy Clause to pre-empt state law. Determining whether it has exercised this power, we must examine congressional

---

**15.** Title 68 O.S.1981 § 1107, see note 6, supra.

**16.** *Goldberg v. Sweet,* —— U.S. ——, ——, 109 S.Ct. 582, 592, 102 L.Ed.2d 607, 620–21 (1989); *Commonwealth Edison Co. v. Montana,* 453 U.S. 609, 627, 101 S.Ct. 2946, 2958, 69 L.Ed.2d 884,

900 (1981) *reh'g denied* 453 U.S. 927, 102 S.Ct. 889, 69 L.Ed.2d 1023 (1981).

**17.** *D.H. Holmes Co. v. McNamara,* 486 U.S. 24, ——, 108 S.Ct. 1619, 1624, 100 L.Ed.2d 21, 28 (1988).

intent. Congress allows states to impose a severance tax. Title 15 U.S.C. § 3320 specifically provides that a state may levy a severance tax and the additional tax is not considered to exceed the maximum lawful price of natural gas allowed by the Act.[18] The conservation excise tax prescribed by 68 O.S.1981 § 1108 does not conflict with the Natural Gas Act, the Supremacy Clause, or the authority of the Federal Commission under § 3320.[19]

AFFIRMED.

HARGRAVE, C.J., OPALA, V.C.J., and HODGES, LAVENDER, SIMMS, DOOLIN and SUMMERS, JJ., concur.

---

**18.** Title 15 U.S.C. § 3320 (1978), see note 5, supra.

**19.** *Post Oak Oil Co. v. Okla. Tax Comm'n,* see note 8, supra.