INTERNATIONAL BUSINESS MACHINES CORPORATION, Appellant,

v.

OKLAHOMA TAX COMMISSION, Appellee.

No. 74715.

Supreme Court of Oklahoma.

April 20, 1993.

Rehearing Denied June 15, 1993.

L.E. Stringer, Jean A. McDonald, Roger A. Strong, Oklahoma City, for appellant.

Joe Mark Elkouri, Christy J. Caesar, Linda Ruschenberg, Oklahoma City, for appellee.

HARGRAVE, Justice.

The question before us is whether certain sales made by International Business Machines ("IBM") are subject to municipal sales tax in Oklahoma. The administrative law judge, based on stipulated facts, found that transfer of possession occurred in Oklahoma and that the transfers were subject to the sales tax. The Oklahoma Tax Commission adopted the findings, conclusions and recommendations of the administrative law judge as the Order of the Commission. The Court of Appeals reversed, finding that the passing of title outside Oklahoma, according to the contract between the parties was determinative that the sale occurred outside Oklahoma, relying on *Phillips v. Oklahoma Tax Commission*, 577 P.2d 1278 (Okla.1978), and on 68 O.S.1981, § 1352(J)(2).

The facts are stipulated. IBM sold computer equipment and accessories to customers in Oklahoma during the period July 1, 1981 to September 30, 1983. Two types of machines were sold: machines that were leased and subsequently purchased by the lessee, and new machines. Only new machines are involved in the transactions at issue. The sales were made pursuant to preprinted agreements ("Agreements") and more specific supplements to the agreement ("Supplement") that identified the particular machine the customer desired to purchase. Each machine was then delivered by IBM to a common carrier, unaffiliated with IBM, at the plant where the machines were manufactured, all being outside the state of Oklahoma. Each machine was delivered by the common carrier from the manufacturing plant to the common carrier's consolidation center in Dallas. At the consolidation center, the machines specified in the Supplement were assembled by the common carrier's employees for delivery to the customer. The carrier then delivered the machine from Dallas to the customer in Oklahoma, or, if a machine required any special handling, the carrier delivered the machine from Dallas to the warehouse of Hasty Transfer & Storage, Inc. in Oklahoma City, also a common carrier unaffiliated with IBM. Hasty then delivered the machine from its warehouse in Oklahoma City to the customer. IBM was required by the Agreement to install each machine and installation was done by IBM personnel furnished from the local IBM office nearest to the customer. The customer was required to provide a suitable location for installation, and unless provided otherwise, would unpack and place the machine in the desired location.

Under the Agreement, title to each machine ordered passed to the customer on the latter of the date of shipment or the date of receipt of the Supplement by IBM. IBM bore the risk of loss on the machines prior to installation. The customer was required to pay IBM for the machine on the date immediately after the date on which the machine was installed. If installation was delayed, payment was due on the date

immediately following the day of delivery or the day it was available for delivery.

IBM contended that the above-described transactions are not subject to municipal sales tax under the Oklahoma Sales Tax Code, 68 O.S.1981 § 1350 et seq., arguing that under § 1352(J), title and possession, by express contract provisions, passed outside the state of Oklahoma. The Tax Commission contended that although title to the machines was transferred outside the state pursuant to the Agreement, the sales were not complete until the machines were installed and risk of loss transferred to the buyer, relying on *Liberty Steel Company v. Oklahoma Tax Commission,* 554 P.2d 8 (Okla.1976). IBM paid the taxes under protest.

The parties have stipulated that the only Oklahoma sales taxes currently at issue are the municipal sales taxes. The Oklahoma Sales Tax Code, 68 O.S.1981 § 1350 et seq., provides, at § 1354, that:

"There is hereby levied upon all sales, not otherwise exempted in this article, an excise tax of two percent (2%) of the gross receipts or gross proceeds of each sale of the following: (A) Tangible personal property ..."

■ Title 68 O.S.1981 § 2701 et seq. provides for municipal taxation. Section 2701 provides that any incorporated city or town in the state is authorized to assess, levy and collect taxes for general and special purposes of municipal government as the legislature may levy and collect for purposes of state government. Section 2702 provides that the municipality may contract with the Oklahoma Tax Commission to collect and enforce the municipal taxes in the same manner in which the Commission collects and enforces any similar state tax.

The term "sale" as used in the Sales Tax Code is defined at § 1352(L):

" 'Sale' shall mean the transfer of either title or possession of tangible personal property for a valuable consideration regardless of the manner, method, instrumentality or device by which the transfer is accomplished in the state ..."

The parties have stipulated that transfer of title passed outside the state of Oklahoma; it is necessary only for us to determine whether transfer of possession occurred in Oklahoma, and we conclude that it did. We have defined possession, as used in the Sales Tax Act, as referring to one having actual physical control of a thing. *Ford v. Okla. Tax Commission,* 285 P.2d 436 (Okla.1955). The stipulated facts are that risk of loss remained with IBM until after delivery and installation at the customer's place of business. Payment for the equipment was not made until after installation at the customer's place of business in Oklahoma. Actual physical control of the machines by the customer occurred in Oklahoma. Although IBM argues in its brief in chief that transfer of possession occurred outside the state of Oklahoma because the machines were delivered to a common carrier at the manufacturing plant, which constituted delivery to the purchaser at that time, the stipulated facts indicate that the machines were not ready for delivery to the customer at the time they left the manufacturing plant. The common carrier used was Burnham Services Corporation or another common carrier, each unaffiliated with IBM, and Burnham transported the machines to its consolidation facility in Dallas, Texas where it assembled the machines ordered by the customers for shipment to Oklahoma. This indicates that IBM had not relinquished control when the machines were delivered to the common carrier.

IBM argues that the "point of sale" was outside Oklahoma. The Court of Appeals agreed that the controlling factor was the "point of sale", defined at 68 O.S.1981 § 1352(J) as:

" 'Point of sale' shall mean, for purposes of administration of any municipal sales tax levied in this state, the physical location at which a sale of tangible personal property or services, taxable under this article, is made in the course of the vendor's business, to be determined by one of the following:

(1) If the sale is made pursuant to a written contract, point of sale shall be in accordance with any express contract provisions or, in the absence thereof, at the place of consummation of the contract; or

(2) If the sale is subject to the Uniform Commercial Code, the point of sale shall

be the place where possession or title is transferred, whichever occurs first, in accordance with the Uniform Commercial Code; ..."

The Administrative Law Judge relied upon § 1352(J)(1), stating that in the case at bar the transactions were made pursuant to written contracts and that thus, the point of sale was the place of consummation of the contract, which was in this case the customer's place of business in Oklahoma where IBM completed its performance under the contract. The Court of Appeals did not cite § 1352(J)(1), but found that § 1352(J)(2) was controlling because the machines were goods and the sales were subject to the U.C.C. The Court of Appeals quotes 12A O.S.1981 § 2–401 for the proposition that title to goods passes in any manner and on any conditions explicitly agreed by the parties. The Court of Appeals concluded that the sales were complete upon transfer of title outside Oklahoma, and were not subject to municipal sales tax in Oklahoma.

■ The "point of sale," as defined above, does not determine whether the sale *occurred* in Oklahoma. The definition of point of sale states that it is for purposes of *administration* of any municipal sales tax *levied in this state.* The definition states that point of sale is the physical location at which a *sale* of tangible personal property, *taxable under this article,* is made in the course of the vendor's business. From the definition, we conclude that point of sale is relevant for purposes of administration of a municipal sales tax levied in the state. That is, once it is determined that a sale taxable under the Sales Tax Code has occurred, point of sale determines which municipality receives the tax. Point of sale is used to determine which municipality *within the state* is entitled to levy the tax, in order to avoid double municipal taxation. IBM's brief in chief, page 5 states: "Recognizing the difficulties that determining the point of sale for Oklahoma municipal sales tax purposes under the Code could present and that a single transaction could involve more than one municipality, the Oklahoma Legislature specifically defined the point of sale for

Oklahoma municipal sales tax purposes under the Code." The parties here dispute only *whether* the sale was subject to levy of the municipal sales tax; no issues have been raised concerning administration of the tax.

■ The definition of "sale" at § 1352(L), for purposes of Oklahoma's Sales Tax Code, is the transfer of either title *or* possession. *McGoldrick v. Berwind White Coal Mining Co.,* 309 U.S. 33, 60 S.Ct. 388, 84 L.Ed. 565 (1940), recognized that transfer of either title or possession to the purchaser within the state is the taxable event. *Accord, Liberty Steel Co. v. Oklahoma Tax Commission,* 554 P.2d 8 (Okla.1976).

The statutes here involved are not ambiguous: § 1354 provides for levy of the tax on sales and § 1352(L) defines sale. We may not speculate as to the probable intent of the legislature apart from the words of the statute. As we said in *Ford v. Okla. Tax Commission,* 285 P.2d 436, 437 (Okla.1955), " 'Sale' is defined in statute and unless there is a doubtfulness or doubleness of meaning, or indistinctness or uncertainty of meaning of the language and expression used in defining sale, the statute is to be applied, and not interpreted, since the statute speaks for itself." In the case at bar, the statutes provide for levy of a tax upon all sales not exempted. Sale is defined as the transfer of either title or possession in this state. We have determined that transfer of possession occurred in Oklahoma, thus subjecting the transfer to municipal sales tax in Oklahoma.

CERTIORARI HAVING BEEN GRANTED PREVIOUSLY, THE OPINION OF THE COURT OF APPEALS IS VACATED AND THE ORDER OF THE TAX COMMISSION IS AFFIRMED.

LAVENDER, V.C.J., and OPALA, ALMA WILSON and WATT, JJ., concur.

HODGES, C.J., and SIMMS and KAUGER, JJ., concur in result.