In the Matter of the SALES TAX PROTEST OF LTV ENERGY PRODUCTS COMPANY.

LTV ENERGY PRODUCTS COMPANY and G.D. Nicholson, A.L. Bartley, Jr., K.C. Caldabaugh, W.P. Twomey, Thomas J. Hopwood, A. Lee Murkey, Noble D. Lane, Neil L. Maslen, D.R. McWhirter, G. Gary Stegall, Donald M. Ursini, R.E. Wright, H.C. Hedrick, Jr., and G.E. Smith, as officers of LTV Energy Products Company, Appellants,

v.

OKLAHOMA TAX COMMISSION, Appellee.

No. 83181.

Court of Appeals of Oklahoma, Division No. 1.

Sept. 20, 1994.

J. Lawrence Blankenship, Gladys E. Cherry, Oklahoma City, for appellants.

David Hudson, Marjorie L. Welch, Oklahoma Tax Com'n, Oklahoma City, for appellee.

## MEMORANDUM OPINION

JONES, Judge:

In 1991, the Oklahoma Tax Commission ["Commission"] proposed to assess Appellant LTV Energy Products Company ["LTV"] and its principal officers for additional municipal sales taxes due on sales made by LTV ·between May 1, 1988 and October 31, 1989. The Commission denied Appellants' protest of the proposed assessment, and Appellants perfected this appeal.

LTV is a diversified energy company which, amongst its other activities, sells and services subsurface pumps used on oil and gas wells. From the stipulated facts and unchallenged evidence introduced in proceedings below, we can reconstruct the sales transactions which are the subject of Commission's assessment: When a pump malfunctions, the affected customer normally contacts LTV by telephone or radio from a wellsite or from the customer's field office to request repairs, although occasionally the customer may directly inform an LTV field representatives if one happens to be in the area. LTV then sends a specially-equipped truck to retrieve the pump and return it to one of LTV's seven pump service shops in Oklahoma. Only rarely does a customer deliver its pump to a pump shop for repair. In the course of repairing the pump, LTV may provide [i.e., "sell"] new or retooled parts.

Until the Commission notified LTV of its proposed additional assessment, LTV paid sales taxes on parts sales according to the tax rates in force in the municipality where the customer's well or field office was located, and, so, paid no municipal sales tax if the well or field office was located outside a taxing municipality. The Commission assumed when it assessed the additional taxes that such taxes should be paid according to the prevailing rates in the municipalities where LTV's pump shops were located.

■ So presented, the issue here turns on an interpretation of the statute defining "point of sale" for municipal sales taxes. 68 O.S.1991 § 1352(J).[1] After review of the record and the recent history of § 1352, we

---

1. Section 1352(J) provides:

" 'Point of sale' means, for purposes of administration of any municipal or county sales tax levied in this state, the physical location at which a sale of tangible personal property or services taxable under this article is made in the course of the vendor's business, to be determined by one of the following:
(1) If the consumer identifies tangible personal property or services and pays the sale price, in cash or otherwise, at a place of business maintained by the vendor, the point of sale shall be the location of such place of business, regardless of the place of delivery;
(2) If a consumer, from a location outside the jurisdiction in which the vendor is engaged in business, orders or requests, by mail or telephonic or telegraphic device, to buy tangible personal property or services, the point of sale shall be the place of delivery, regardless of the manner of transportation;
(3) If the sale is made through solicitation at a place other than the place of business of the vendor, either by an employee, representative, or any other agent of the vendor, the point of sale shall be the place where the solicited offer to buy.was accepted or approved by the vendor if the consumer does not have a right to accept or reject delivery;
(4) If the sale is made through solicitation at a place other than the place of business of the vendor, either by an employee, representative, or any other agent of the vendor, and the consumer has a right to accept or reject delivery, the point of sale shall be the place of delivery;"
* * *

conclude that the point of sale for LTV's sales of new and retooled pump parts is the place where those parts were delivered to the customer. Accordingly, we reverse the order of the Commission.

■ Much of Appellants' and Commission's appellate briefs are devoted to discussing how a risk of loss term [2] in LTV's invoice does or does not affect how point of sale should be determined. We find that discussion misplaced. The Legislature amended § 1352 in 1987 by deleting provisions which determined point of sale according to the express agreement of the parties or to transfer of title or possession under the UCC.[3] From this, we glean a legislative intent to prevent the parties from fixing point of sale by agreement, and to ignore technical rules on passage of title or possession found in the Code. Thus, we find no statutory justification for ascribing to the f.o.b. term in LTV's invoice the significance which the Commission seeks to give it.

We also find that reliance by the Commission and by the administrative law judge on the definition of "sale" in 68 O.S.1991 § 1352(L), and the opinion in *International Business Machines Corp. v. Oklahoma Tax Comm'n*, 853 P.2d 770 (Okla.1993), *to the exclusion of § 1352(J)*, to be similarly misplaced. The IBM case involved only the question of whether a sale had occurred in Oklahoma, and not the point of sale within the state. *See International Business Machines*, 853 P.2d at 773. Section 1352 states that point of sale is "to be determined" according to its subsections (1) through (4).

The evidence clearly leads to the conclusion that point of sale in this case must be the "place of delivery," i.e., the location where the parts were delivered to the customer. 68 O.S.1991 § 1352(J)(2). Subsection (2) unambiguously provides that if the customer requests goods or services from a location outside the jurisdiction where the vendor does business, the point of sale is the place of delivery. LTV's zone manager testified that the vast majority of repair transactions are initiated by the customer by telephone or radio, and this was true of the transactions used by the Commission in its sample audit to make the assessment of additional sales tax. The Commission presented no evidence to challenge the manager's testimony. The administrative law judge noted the manager's testimony in his findings of fact, yet ignored that testimony in the conclusions of law.

■ "Delivery" is the act by which a thing is placed within the actual or constructive possession or control of another. Black's Law Dictionary 428 (6th ed. 1990). We conclude that the place of delivery in this case was the location where LTV actually delivered possession of the parts to the customer. This is consistent with § 1352(J)(2): When the customer orders goods from a remote location, the place of delivery is the place where the customer takes possession of the goods. The parties do not dispute that in most instances LTV delivered a repaired pump with the new or retooled parts to the customer's wellsite. We therefore reject the conclusion adopted by the Commission, based on the view that LTV transferred possession

2. The standard invoice generated by LTV provides, under the heading "Conditions of Sale and Trade Customs," that sales are made "f.o.b. point of shipment unless otherwise expressly stipulated." An f.o.b. ["free on board"] term in a contract for sale of goods governed by the Uniform Commercial Code expresses the parties' agreement on allocating risk of loss. *See* J. White and R. Summers, Uniform Commercial Code § 5–1 (1972); 12A O.S.1991 §§ 2–319(1) and 2–509, UCC Comment 1.

3. The deleted provisions were found in 68 O.S. 1981 § 1352(J)(1) and (2):

"(1) If the sale is made pursuant to a written contract, the point of sale shall be in accor-

dance with any express contract provisions or, in the absence thereof, at the place of consummation of the contract; or
(2) If the sale is subject to the Uniform Commercial Code, Section 1–101 et seq. of Title 12A of the Oklahoma Statutes, the point of sale shall be the place where possession or title is transferred, whichever occurs first, in accordance with the Uniform Commercial Code;"
*See* Okla.Sess.Laws 1987, ch. 213, § 1.
The remaining sections were renumbered (1) through (4) [See Note 1].

of the parts to its customer when they were installed in the pump. This latter conclusion by the administrative law judge is unsupported by any citation of authority, and is, indeed, inconsistent with previous tax cases dealing with transfer of possession. *See Ford v. Oklahoma Tax Comm'n*, 285 P.2d 436, 437–38 (Okla.1955) ("possession" refers to actual physical control of a thing). Only by the most creative legal fiction can it be said that LTV delivered the parts merely by installing them in the customer's pump, before the pump was delivered to the customer.

We therefore hold that the Commission erred by denying Appellants' protest of the additional assessment. The order of the Commission is reversed, and this case is remanded to the Commission for further proceedings consistent with this opinion.

REVERSED AND REMANDED.

HANSEN, P.J. and ADAMS, J., concur.