### GARRISON COAL CO. v. SEMPLE.

No. 10206—Opinion Filed May 24, 1921.

(Syllabus.)

**1. Sales—Delivery—Effect of Delivery to Carrier.**

That as a general rule the delivery of goods by a consignor to a common carrier for account of a consignee has effect as delivery to such consignee is elementary, but this rule is not controlling where the parties have contracted differently.

**2. Same—Action for Breach of Contract—Instructions.**

An examination of the instructions given discloses the court clearly and fairly covered the law as to each particular phase of the case, and under the law this is sufficient.

**3. Appeal and Error—Review — Questions of Fact—Verdict.**

In a law case, where there is competent evidence or inferences that the jury can justifiably draw therefrom which, reasonably support the judgment rendered, this court will not disturb such judgment.

Error from District Court, Oklahoma County; Geo. W. Clark, Judge.

Action by C. Y. Semple against the Garrison Coal Company for breach of contract for sale of wheat. Judgment for plaintiff, and defendant brings error. Affirmed.

G. A. Paul, for plaintiff in error.

Wilson, Tomerlin & Thelkeld, for defendant in error.

McNEILL, J. C. Y. Semple commenced this action in the district court of Oklahoma county against Garrison Coal Company, a corporation, to recover damages for a breach of contract for the sale of certain wheat. The petition alleges that on August 22, 1916, plaintiff entered into a contract in writing to purchase of defendant two capacity cars of No. 2 new wheat at $1.58 per bushel, basis, delivered at Stuyvesant Docks, New Orleans, La., New Orleans weights and grades, delivery to be complete upon arrival at destination and after inspection and weighing. Shipment to be made within 20 days from date of contract for export, the defendant to pay all exchange, inspection, weighing and trackage charges, if any, and certain discounts to apply on lower grades, in event that the wheat should grade lower. It is alleged the first car was shipped on or about August 30, 1916, and the second car was shipped on or about September 20, 1916, and the defendant attached bills of lading to drafts drawn on the plaintiff, and plaintiff, relying upon the contract and agreement and bill of lading that wheat of the grade and quality set forth would be delivered to the plaintiff at Stuyvesant Docks, New Orleans,

and would be properly inspected and weighed, paid the drafts as aforesaid. It is further alleged that the respective cars arrived at destination in December, 1916, at which time an inspection thereof disclosed that said wheat was rotten; and that plaintiff refused to accept the same and offered to return the bills of lading and demanded that defendant make delivery of the wheat of the quality called for in the contract in order that the plaintiff might fulfill his contracts for sale of like wheat, all of which the defendant failed and refused to do.

It is further alleged that on January 6, 1917, plaintiff was compelled to go into the open market and purchase wheat at the market price of $2.03 per bushel, in order to meet his own contracts. It is further alleged that subsequently, by agreement, without prejudice to the rights of either party, the rotten and unmerchantable wheat was sold at $1.50 per bushel, and by reason of the failure to comply with its contract plaintiff suffered damages in the amount of $1,583.17.

The plaintiff filed an amended petition, setting forth and pleading the customs and usages of grain dealers in Oklahoma and throughout the United States relative to making purchases and sales of grain, and reaffirming his original allegations, and filed a further amendment alleging the customs and usages among grain dealers relative to the grading and weighing at destination of shipments, such as here involved, alleging that the official grain inspector and weigher was the usual and customary individual who performed such duties.

Defendant answered by general denial, and a further defense that it delivered the wheat to plaintiff and delivered the bill of lading and plaintiff accepted the wheat upon its arrival and paid the purchase price, and the wheat arrived in New Orleans on the 8th and 30th of September, respectively, but plaintiff negligently and carelessly permitted the wheat to remain in the possession of the railroad and elevator companies until the 15th and 18th of December before attempting to unload it, and that the weather conditions were such that the plaintiff knew the wheat would be damaged, and if plaintiff had used ordinary care in the handling of the wheat, no damage would have resulted; that if the wheat was damaged, it was caused by plaintiff's own negligence and carelessness.

Upon these issues the case was tried to a jury, and the jury returned a verdict in favor of the plaintiff for the full amount. Motion for a new trial was filed and overruled, to which defendant excepted, and the court rendered judgment in favor of the plaintiff and against the defendant upon the verdict

of the jury. From said judgment, this appeal is prosecuted.

The evidence disclosed that the original transaction between the parties relating to the sale of the wheat was by a conversation over the phone on the 20th or 21st of August, and plaintiff on August 22, 1916, wrote a letter of confirmation of the purchase, which letter was delivered to the defendant. The letter referred to the purchase over the phone and purported to be a confirmation of said conversation regarding the sale and detailed the terms of the contract, the kind and character of wheat to be shipped and how the same should be shipped and to whom. It contained the further provision:

"It is distinctly understood the destination weights and grades are to govern. Reasonable margins shall at all times be left in drafts to cover possible shortages in weights, grades, etc., at destination. * * * No shipments to be made until routing instructions have been received, all bills of lading shall show such routing, * * * mailing invoices to the office on which your draft is drawn so they will reach said office without or before draft is presented. * * * It is understood by shippers or sellers that this contract is only completed after such shipments are received, graded and weighed at destination. * * * I reserve the right on failure to perform this contract on part of shipper to extend time, cancel or buy in for account of seller, without previous notice. The receipt of this contract by shipper, without immediate notice to C. Y. Semple of error, shall be binding in all its terms."

On August 21st, the defendant herein wrote a letter of confirmation of sale and same was delivered to plaintiff, which said letter was as follows:

"We confirm sale to you by phone Kamerdeiner, Mr. Creamer talking, of 2 cars 60 cap Bushels, Sack— To grade Wheat at $1.58 per bushel, basis f. o. b. New Orleans, Delivered—shipment within 2 weeks days Dest. weights Dest. grades to govern."

For reversal plaintiff in error discussed all the assignments of error under one heading, to wit: That the court erred in overruling motion for new trial. It is first asserted by plaintiff in error that: "The title to the wheat was in plaintiff upon delivery of bill of lading to him."

The Supreme Court of the United States in discussing this question in the case of Andrews v. U. S., 207 U. S. 229, 52 L. Ed. 185, announced the law as follows:

"That as a general rule the delivery of goods by a consignor to a common carrier for account of a consignee has effect as delivery to such consignee, is elementary. That where a purchaser of goods directs their delivery for his account to a designated carrier, the latter becomes the agent of the purchaser, and delivery to such carrier is a legal delivery to the purchaser, is also beyond question. Certain also is it that when on the delivery of goods to a carrier bills of lading are issued for the delivery of the goods to the consignee or his order, the acceptance of such bills of lading constitutes a delivery. Of course the presumption of delivery arising from the application of any or all of these elementary rules would not control in a case where by contract it clearly appeared that, despite the shipment, the goods should remain at the risk of the consignor until arrival at the point of ultimate destination."

Under this heading plaintiff in error argues that, the title having vested in the plaintiff, subject, however, only to certain margins, weights, and grades and inspection thereof, if any loss occurred by reason of any improper delivery of the wheat, the carrier, and not the Garrison Coal Company, would be liable. It is further suggested that the wheat reached New Orleans shortly after being shipped, but was not unloaded, because of negligence of plaintiff. This argument presents questions of fact that were properly submitted to the jury by the court in instructions Nos. 5, 6, and 7. The court properly submitted to the jury the questions of fact as contended by both plaintiff and defendant, and the force and effect of letters of confirmation, and the force and effect of the bills of lading, and the question whether the plaintiff exercised reasonable diligence in unloading the wheat and in ascertaining the grade and condition of the wheat. These questions were all properly submitted to the jury under proper instructions, and the finding of the jury upon these questions of fact, the evidence being conflicting, is binding upon the court. Plaintiff in error does not complain of any particular instructions given by the court, but bases its argument upon the theory above announced, and as to the measure of damages. An examination of the instructions given discloses the court clearly and fairly covered the law as to each particular phase of the case, and under the law this is sufficient. Moorehead v. Daniels, 57 Okla. 298, 153 Pac. 623.

The theory of defendant in error is different from that of plaintiff in error. If plaintiff in error's theory is correct, the defendant in error could not recover, but the jury by their verdict did not find the facts to be as plaintiff in error alleged or construed them to be, but found them to the contrary, and there is sufficient evidence to support the finding of the jury on the questions of fact submitted.

This court in a long line of decisions has stated:

"In a law case, where there is competent evidence or inferences that the jury can justifiably draw therefrom which reasonably support the judgment rendered, this court will not disturb such judgment." Baker-Hanna-Blake Co. v. Paynter-McVicker Gro. Co., 73 Oklahoma, 174 Pac. 265.

Finding no prejudicial error in the record, the judgment of the trial court is affirmed.

HARRISON, C. J., and PITCHFORD, MILLER, and NICHOLSON, JJ., concur.