**KOCH FUELS, INC., Appellant,**

v.

**STATE of Oklahoma, ex rel.
OKLAHOMA TAX COM-
MISSION, Appellee.**

**No. 75943.**

Supreme Court of Oklahoma.

Oct. 26, 1993.

472

Stephen P. Friot, Spradling, Alpern, Friot & Gum, Oklahoma City, Kelley D. Sears, Rick E. Bailey, Wichita, KS, for appellant.

Joe Mark Elkouri, Gen. Counsel, Marjorie L. Welch, Asst. Gen. Counsel, Oklahoma City, for appellee.

SUMMERS, Justice.

The question is whether Koch Fuels, Inc. must pay a sales tax to the State of Oklahoma on certain fuel oil it sold to Burlington Northern, Inc., a railroad. The Oklahoma Tax Commission made a sales tax assessment, finding the transaction to have been a sale of tangible personal property occurring within the state, and taxable under 68 O.S.Supp.1984 § 1354. Koch Fuels appeals, claiming (1) there was no sale of tangible personal property, and (2) if there was, any sales tax on it was in violation of the U.S. Constitution under *Complete Auto Transit, Inc. v. Brady*, 430 U.S. 274, 97 S.Ct. 1076, 51 L.Ed.2d 326 (1977). The amount in dispute is $136,568.00 plus interest and penalties. We conclude that although the transaction did amount to a sale as statutorily defined, one section of the Sales Tax Code impermissibly discriminates against interstate commerce, and therefore the tax does not pass the four-prong test established in *Complete Auto, supra*. The Order of the Tax Commission must be reversed.

Koch's motion to retain the appeal in this Court was granted, in part because the case presented an issue of first impression involving the application of the Oklahoma Sales Tax Code and Commerce Clause of the United States Constitution to fuel oil sales where the fuel is transported by a common carrier to an out-of-state location. Koch does not collect sales taxes on any of these sales. We also note that the Tax Commission Order on appeal, No. 90–06–07–028, was published by the Commission and given precedential effect. With the pronouncement of this opinion the discriminatory section of the statute falls, and Koch is saved from paying the sales tax as assessed. But the larger issue of whether these types of sales are subject to a sales tax, apart from the offending section, remains as an issue in controversy. This latter issue is the substance of the published Commission Order, and the taxpayer has

vigorously objected to the Commission's assertion that the tax is valid.

A similar circumstance came before the United States Supreme Court in *Tyler Pipe Industries, Inc. v. Washington Department of Revenue*, 483 U.S. 232, 107 S.Ct. 2810, 97 L.Ed.2d 199 (1987) where the Court said:

> Compliance with our holding on the discrimination issue, however, would not necessarily preclude the continued assessment of a wholesaling tax. Either a repeal of the manufacturing tax or an expansion of the multiple activities exemption to provide out-of-state manufacturers with a credit for manufacturing taxes paid to other States would presumably cure the discrimination. We must therefore also consider the alternative challenge to the wholesale tax advanced by Tyler and other appellants that manufacture products outside of Washington for sale in the State.

*Id.*, 483 U.S. at 248–249, 107 S.Ct. at 2820.

While the discriminatory aspect of the Oklahoma sales tax scheme is cured by our opinion today we agree with the United States Supreme Court that the Commerce Clause challenge should be addressed in its entirety.

## I. THE FACTS

In the final three months of 1984 Koch and Burlington Northern entered into three separate contracts for the sale of No. 2 fuel oil. The terms of the contracts were agreed upon over the telephone, the parties being in Wichita, Kansas (Koch) and St. Paul, Minnesota (Burlington Northern). The contracts appear on Koch's printed forms titled "Sales Agreement", and include provisions for quantity and type of oil, price per gallon, passing of title, taxes, freight charges, credit, payment, limitation of liability, billing, non-assignability of the contract, etc.

In all three contracts the oil was to be delivered F.O.B. "Group III" and shipped via Williams Pipeline. The testimony before the Commission was that Group III included several refineries in Oklahoma

and Kansas that are hooked up to the Williams Pipeline. Williams operates an interstate pipeline connecting several states, and Burlington Northern could extract the oil from any of the Williams' Pipeline terminals.

Because Williams Pipeline at Tulsa, Oklahoma was the actual F.O.B. point of delivery, if Burlington Northern extracted the oil from any location other than Tulsa a transportation charge or "tariff" from Williams would be paid by Burlington Northern.[1] Burlington Northern extracted the fuel oil in Nebraska, Missouri, Illinois, South Dakota, Minnesota, Iowa, and North Dakota, and was charged a transportation tariff. The record also shows that Williams Pipeline delivered to Burlington Northern some oil in 1984 and 1985 in Oklahoma City, but there is no evidence that this oil came from the Koch sales at issue.

Oil is transported in the Williams Pipeline by shipment, consignment, or Product Transfer Order (PTO). A shipment originates with a particular company, such as Koch, and that company ships the product through the pipeline and pays the transportation charge. A portion of a shipment can "be consigned to another company if the originating company such as Koch did not want to take title to the entire batch entering the system." The company to which the oil is consigned receives its portion of the product, but the originating company still pays the transportation charge or tariff.

In this transaction Koch used a PTO to record the delivery or transfer of oil from Koch to Burlington Northern. Once the agreement to sell the oil occurs the scheduling department of Koch contacts Williams and Burlington Northern to agree

upon a time for the product transfer to be scheduled. The shipper "who holds title to the product" contacts the pipeline by telephone or mails the PTO to the pipeline. An employee of Williams testified that a PTO was "a tool for a custody transfer between shippers operating within the Williams Pipeline system." Oil may be PTOed at any location on the pipeline system, and Koch "PTOed the barrels at West Tulsa." Oil PTOed at a specific location is carried on Williams' books as the receiving company's (Burlington's) oil at that location.

■ The exact PTO location is mutually agreed upon by the buyer and seller of the oil. Koch could no longer control the disposition of the oil once it was PTOed by Koch to Burlington Northern. However, Burlington Northern could control the disposition of the oil transferred, and could decide to withdraw the oil in Tulsa or other locations "down the pipeline" and in other states. The record does not show whether sales tax or use tax was collected on the sale or the fuel oil by any other State.[2]

## II. THERE WAS A SALE OF OIL

■ Koch argues that it really never owned any fuel oil and that a sale of oil never occurred. It argues that it owned an intangible contract right to receive oil from the pipeline, and that it transferred this right. This argument is made because of the language of the sales tax statutes:

"Sale" means the transfer of title of either title or possession of tangible personal property for a valuable consideration regardless of the manner, method, instrumentality, or device by which the

---

1. A "tariff" is a publication containing rates, classification ratings, rules, regulations or other provisions. For examples of this use of the term see *Maislin Industries, U.S. v. Primary Steel, Inc.*, 497 U.S. 116, 110 S.Ct. 2759, 111 L.Ed.2d 94 (1990), (discussing publication of carrier's rates filed with Interstate Commerce Commission, i.e., tariff rates, and those rates versus negotiated rates).

2. Sales and use taxes tax different transactions. A sales tax is a tax on the purchase or sale while

a use tax is a tax upon the enjoyment or use of property that has already been purchased. *McLeod v. J.E. Dilworth Co.*, 322 U.S. 327, 330, 64 S.Ct. 1023, 1025, 88 L.Ed. 1304 (1944). One brief filed with the Tax Commission by in-house counsel for Koch alleged that Burlington Northern paid use taxes on the fuel oil in the States where it took the oil from the pipeline. O.R. at 25–26.

transfer is accomplished in this state, including but not limited to:

68 O.S.Supp.1984 § 1352(L).

"Tangible personal property" means personal property which may be seen, weighed, measured, felt, or touched or which is in any other manner perceptible to the senses.

68 O.S.Supp.1984 § 1352(N).

Koch thus seeks to avoid the tax by showing that no sale of tangible personal property occurred.

■ An obvious response to such an argument is that the contracts do not specify the sale of "a right to take oil", but facially show the sale of a certain amount of fuel oil at an agreed per gallon price. See 15 O.S.1981 § 160 and *Mercury Inv. Co. v. F.W. Woolworth Co.*, 706 P.2d 523, 529 (Okla.1985), explaining that words in a contract are to be understood in their ordinary sense unless used by the parties in a technical sense, or unless a special meaning is given to them by usage.[3]

Tangible property is defined by statute for the purpose of sales tax as "personal property which may be seen, weighed, measured, felt, or touched or which is any manner perceptible to the senses." 68 O.S.Supp.1983 § 1352(N). The object of the contracts, fuel oil, may be measured, felt and touched, and is tangible property. Koch recognizes this in principle, but claims it does not apply since it owned no oil and no oil changed owners.

In support of its theory Koch argues that only a right to take the oil was transferred to Burlington Northern, and points to testimony by an employee of Williams that the "risk of loss" of the oil in the pipeline was upon Williams. But this same employee testified that the title of the oil was held by the shipper (Koch) prior to the PTO. The Sales Agreement between Koch and Burlington Northern provides that *"Title and risk of loss shall pass from SELLER to BUYER upon delivery of said petroleum products at the F.O.B. delivery point."* (Emphasis added).

One witness stated that the oil in the pipeline was transferred from the inventory of Koch to the inventory of Burlington Northern upon receipt of the product transfer order. Additionally, Burlington Northern was billed the tariff for the oil from Tulsa to where Burlington Northern took the oil off the pipeline—an act consistent with transferring title from Koch to Burlington Northern. Thus, Koch owned or held title to a certain amount of oil in the possession of a carrier for the benefit of Koch, and when the PTO was executed the PTO served the purpose of recording the change in ownership from Koch to Burlington Northern.

Koch also argues that its "right to draw oil from the pipeline" is sufficiently analogous to a bank depositor's right to withdraw funds from a bank for this court to hold that the agreement between the pipeline and shipper is that of debtor-creditor. In other words, "pipeline account" transfers are not the transfer of tangible property and should not be taxed as such.

■ Koch has not produced any evidence showing that it had a debtor-creditor relationship with Williams.[4] No contracts between these two are before the Court. Koch bears the burden of supplying evidence to support its legal argument on appeal. *Pracht v. Oklahoma State Bank*, 592 P.2d 976, 978 (Okla.1979); *Hamid v. Sew Original*, 645 P.2d 496, 497 (Okla.

---

**3.** Neither party relies on any provision of Oklahoma's Uniform Commercial Code, 12A O.S. 1981 § 1–101 et seq. and our construction of the contracts should not be construed as implying the applicability or non-applicability of any particular provision of the Commercial Code.

**4.** Historically, the bank-customer relationship has been construed as a debtor-creditor relationship that is created and governed by both the deposit contract and applicable rules of the Commercial Code. *Shaw v. Union Bank and Trust Co.*, 640 P.2d 953 (Okla.1981); *Ingram v. Liberty Nat. Bank & Trust Co.*, 533 P.2d 975 (Okla.1975); F. Miller and A. Harrell, *The Law of Modern Payment Systems and Notes*, 262 (1985). Thus, Koch's argument requires an analysis of the contractual arrangement between Koch and Williams and the applicable law governing the relationship. Neither has been provided to this Court by Koch.

1982). Neither has Koch supplied any authority, other than by way of analogy, that the Koch–Williams relationship, i.e., a shipper-pipeline relationship, should be considered to be that of debtor-creditor. We conclude that Koch sold fuel oil to Burlington Northern.

### III. THE COMMERCE CLAUSE CHALLENGE

Koch next argues that the Oklahoma Sales Tax Code is unconstitutionally applied to Koch, because when Burlington Northern pulled the oil from the pipeline outside of Oklahoma a sales tax on the oil violates the Commerce Clause of the United States Constitution, Art. I, § 8, cl. 3.[5]

■ The Commerce Clause prohibits some, but not all, taxes upon interstate commerce. *Cities Service Gas Co. v. Oklahoma Tax Commission*, 774 P.2d 468, 472–473 (Okla.1989), *cert. denied*, 493 U.S. 854, 110 S.Ct. 157, 107 L.Ed.2d 115 (1989). In *Complete Auto Transit, Inc. v. Brady*, *supra*, the high court established a four prong test to determine if a state tax violates the Commerce Clause:

1) Whether the tax is applied to an activity with a substantial nexus with the taxing state;

2) Whether the tax is fairly apportioned;

3) Whether the tax discriminates against interstate commerce; and,

4) Whether the tax is fairly related to the services provided by the state.

430 U.S. at 279, 97 S.Ct. at 1079.

This test is still used by the Court, *Quill Corp. v. North Dakota by and through Heitkamp*, —— U.S. ——, 112 S.Ct. 1904, 119 L.Ed.2d 91 (1992), and has been recognized in one of our own opinions. *Cities Service*, 774 P.2d at 473.

### (A) SUBSTANTIAL NEXUS WITH THE TAXING STATE

■ The first prong is whether the tax is applied to an activity with a substantial nexus with the taxing state. The U.S. Supreme Court since *Complete Auto* has required that there must be some minimum connection between the activity and the state. *Container Corp. of America v. Franchise Tax Bd.*, 463 U.S. 159, 165–166, 103 S.Ct. 2933, 2940, 77 L.Ed.2d 545 (1983); *National Geographic v. California Equalization Board*, 430 U.S. 551, 561, 97 S.Ct. 1386, 1392, 51 L.Ed.2d 631, 640 (1977). This analysis necessarily requires an examination of the activity taxed. Koch argues that no nexus exists between the activity taxed and the State of Oklahoma. We disagree.

In several cases involving the Due Process Clause and the Commerce Clause the Court has looked to the place where the goods are delivered and used that location to find the presence of a nexus. For example, the place of delivery (f.o.b. Salt Lake City, Utah) was used to invalidate an Idaho tax in *American Oil Co. v. Neill*, 380 U.S. 451, 458, 85 S.Ct. 1130, 1134, 14 L.Ed.2d 1 (1965).[6] Place of delivery was used in *McGoldrick v. Berwind–White Coal Mining Co.*, 309 U.S. 33, 60 S.Ct. 388, 84 L.Ed. 565 (1940) to validate a New York City sales tax when an out-of-state seller maintained an office in New York City and delivered the goods in New York City. Then, in *McLeod v. J.E. Dilworth Co.*, 322 U.S. 327, 64 S.Ct. 1023, 88 L.Ed. 1304 (1944) the Court invalidated an Arkansas

---

**5.** This clause of the Constitution that "The Congress shall have power … to regulate commerce … among the several states…." has been construed as prohibiting certain state actions that interfere with interstate commerce. *Quill Corp. v. North Dakota by and through Heitkamp*, —— U.S. ——, ——, 112 S.Ct. 1904, 1911, 119 L.Ed.2d 91 (1992). The Commerce Clause's limitation on a state's authority in taxation is referred to as the "negative" or "dormant" Commerce Clause. *Id.*

**6.** *American Oil Co.* was a Due Process Clause challenge and the analysis for such is distinct from a Commerce Clause challenge. *Quill*, —— U.S. at —— ——, 112 S.Ct. at 1909–1911. While both require a "nexus", the type of nexus sufficient to tax has become different for each Clause due to the "flexible approach" in a Due Process analysis under *International Shoe Co. v. Washington*, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945) and its progeny. *Quill Corp. v. North Dakota by and through Heitkamp*, —— U.S. at —— – ——, 112 S.Ct. at 1910–1911.

tax where the goods were shipped by common carrier from Tennessee (f.o.b. Memphis) to buyers in Arkansas, with title passing upon delivery of the goods to the carrier in Tennessee before the goods arrived in Arkansas. More recently in *State Tax Commission v. Pacific States Cast Iron Pipe Co.*, 372 U.S. 605, 83 S.Ct. 925, 10 L.Ed.2d 8 (1963) the Court explained that where delivery was made and title transferred at place of manufacture, that State could assess a sales tax although the goods were then shipped out-of-state.

The point of delivery or destination of the goods as a criteria for imposing a sales tax is derived from and consistent with the jurisprudence of sales and conflicts of law. For example, in *United States v. R.P. Andrews & Co.*, 207 U.S. 229, 240, 28 S.Ct. 100, 104, 52 L.Ed. 185 (1907), the United States Supreme Court explained (1) that delivery of goods by a consignor to a common carrier, for account of a consignee, has the same effect as delivery to such consignee, and (2) that when a purchaser of goods directs their delivery for his account to a designated carrier, the latter becomes the agent of the purchaser, and delivery to such carrier is a legal delivery to the purchaser. We have recognized these principles in our own opinions.[7] They have also been recognized in the context of the jurisprudence of the Uniform Commercial Code and conflict of laws.[8]

■ A State may impose a sales tax upon a transaction when the f.o.b. delivery point is within that State. In the present case the point of delivery and the transfer of title and possession occurred in Okla-

homa under the terms of the contract and the applicable commercial law. The oil was first in the physical possession of the carrier as agent for Koch, and once the inventory change was made the oil was in the physical possession of the carrier as agent for Burlington Northern. *United States v. R.P. Andrews & Co., supra, Universal Features Advertising Co. v. Pettit, supra.* Koch appears to have recognized that delivery of the oil to Burlington Northern occurred, since it used the PTO as the basis for invoicing Burlington Northern for payment. The tax statute requires a transfer of property "in this state", and such is the case here. 68 O.S.Supp.1984 § 1352(L). The transaction thus fits within the category of transactions subject to a sales tax.

Whether the contracts could have been fulfilled by a PTO at refineries in Kansas does not change the character of the act actually performed in Oklahoma to be something less than a sale. The parties treated the contracts as performed by a PTO delivery to the carrier at Tulsa, Oklahoma. They treated the oil as if it was actually at Tulsa for the purpose of paying a transportation charge for transporting the oil from Tulsa to the point on the pipeline where Burlington Northern took the oil out.

■ Koch's nexus challenge includes the argument that the oil was not subject to taxation under authority of *Michigan–Wisconsin Pipe Line Co. v. Calvert*, 347 U.S. 157, 74 S.Ct. 396, 98 L.Ed. 583 (1954). In *Calvert* the state tax was levied upon the taking of gas into interstate commerce.

7. *Universal Features Advertising Co. v. Pettit*, 199 Okla. 213, 185 P.2d 197, 198 (1947); *First State Bank v. Collins–Dietz–Morris Co.*, 190 Okla. 409, 123 P.2d 957, 959 (1941); *Kuppenheimer v. Levine*, 116 Okla. 50, 243 P. 182, 183 (1924); *Garrison Coal Co. v. Semple*, 82 Okla. 60, 198 P. 497, 498–499 (1921); *Rose v. Woldert Grocery Co.*, 54 Okla. 566, 154 P. 531, 533 (1916); *Pabst Brewing Co. v. Smith*, 39 Okla. 403, 135 P. 381, 382 (1913).

8. *See Travenol Laboratories, Inc. v. Zotal, Ltd.*, 394 Mass. 95, 474 N.E.2d 1070, 1074 (1985), (explaining that under the *Restatement (Second) Conflict of Laws* in an f.o.b. contract the place of delivery is usually that where the seller is to deliver the goods to a carrier f.o.b. and that this

result is consistent with Article 2 Sales in the Uniform Commercial Code); *Golden Plains Feedlot, Inc. v. Great Western Sugar Co.*, 588 F.Supp. 985, 991 (D.S.D.1984), (where contract term was "F.O.B., Great Western's Nebraska plant or plants" Nebraska was the State of contract performance and Nebraska law governed the rights and liabilities of the parties); *Restatement (Second) Conflict of Laws*, § 191 Comment d (1971), ("In an f.o.b. contract, the place of delivery ordinarily is that where under the terms of the contract the seller is to deliver the goods to the carrier f.o.b."). We need not discuss exceptions to the rule since Koch has declined to do so.

*Id.*, 347 U.S. at 169, 74 S.Ct. at 402. Koch may transport its oil from the Gulf States to states other than Oklahoma without the imposition of an Oklahoma sales tax. Similarly, Burlington Northern may transport its oil from West Tulsa to points out-of-state without the assessment of a sales tax. The sales tax here does not arise because oil is being transported through the state, but because Koch sold oil to Burlington Northern in Oklahoma. This tax does not run afoul of *Michigan–Wisconsin Pipe Line Co. v. Calvert, supra.*

▇▇ Koch also argues that a sales tax could not be assessed against oil sold while the oil was in the pipeline, even if title to the oil changed in Oklahoma. It argues that a sales tax may be assessed only when the oil is removed from the pipeline. That position has long been rejected by the United States Supreme Court, and "The fact that a product has travelled or will travel in interstate commerce does not preclude a tax being levied at the time of its sale." L. Tribe, *American Constitutional Law,* 446 (2d ed. 1988). *See State Tax Commission v. Pacific States Cast Iron Pipe Co., supra,* and our opinion in *Liberty Steel Company v. Oklahoma Tax Commission,* 554 P.2d 8, 10–11 (Okla.1976).

Thus, in today's case the destination of Koch's oil was West Tulsa, Oklahoma, where title and possession changed from seller to buyer. The fact that Burlington Northern consumed the oil outside of Oklahoma does not immunize from taxation Koch's sale to Burlington Northern within this State. The shipment of the oil by Burlington Northern to a point outside of Oklahoma was not part of the sale.

In sum, the contracts were performed in Oklahoma. The transfer of title and possession to the oil constitutes a "sale" within this State for the purpose of a sales tax, and is an activity which has a substantial nexus to this State. Koch was finished selling when the PTO removed the oil from Koch's inventory. The tax passes the requirement of the first prong of the *Complete Auto* test.

### (B) IS THE TAX FAIRLY APPORTIONED?

The second prong of the *Complete Auto* test is whether the state tax is fairly apportioned. The U.S. Supreme Court has said: "[W]e determine whether a tax is fairly apportioned by examining whether it is internally and externally consistent." *Goldberg v. Sweet,* 488 U.S. 252, 261, 109 S.Ct. 582, 588, 102 L.Ed.2d 607 (1989).

▇▇ A state tax is internally consistent if it is structured so that if every State were to impose an identical tax, no multiple taxation would result. *Container Corp. of America v. Franchise Tax Bd.,* 463 U.S. 159, 169, 103 S.Ct. 2933, 2942–2943, 77 L.Ed.2d 545 (1983). In other words, if another State had an identical statute could the sale be subject to a sales tax in both States? If so, the tax violates the Commerce Clause. Koch argues that the Oklahoma Sales Tax could result in multiple taxation. This argument is based on the statutory definition of a sale. According to the Sales Tax Code a "sale" is defined as "the transfer of *either title or possession* of tangible personal property for a valuable consideration ..." (emphasis added).[9] Koch argues that it could be liable for taxation in the state where title was transferred (Oklahoma), and also be liable for sales tax in the state where possession was transferred to Burlington Northern (outside Oklahoma).[10] Further, Koch points out that at the time of the sales Oklahoma had no sales tax credit provision which would allow a sales tax credit by one state where another has already taxed the activity for the purpose of a sales tax.[11]

---

**9.** 68 O.S.Supp.1984 § 1352(L), (effective Jan. 1, 1984). The current version of this provision is located at 68 O.S.Supp.1992 § 1352(M).

**10.** Although Koch argues that possession was transferred outside of Oklahoma we have rejected that conclusion.

**11.** Oklahoma does provide credit in the Use Tax Code for taxes already paid. 68 O.S.1981 § 1404.

The argument fails in this case because only one State may impose a sales tax under the Sales Tax Code for a particular sale. A "consumer" pays the sales tax. 68 O.S.1981 § 1361. A consumer is the person to whom the sale is made. 68 O.S.Supp.1984 § 1352(C). The sale for the purpose of the tax is made by a transfer of property by title or possession for valuable consideration. 68 O.S.Supp.1984 § 1352(L). The phrase "either title or possession" does *not* result in two sales taxes, one on transfer of title and one on transfer of possession. Rather, the phrase is used to describe when a transfer of property *first rises to the legal definition of a sale for the purpose of the tax.*[12] Under the statutory scheme only one sales tax may be imposed upon one sale. This is because it is the transfer of the property that is being taxed, and not the transfer of title nor transfer of possession. Because only one transfer of property takes place, only one tax is imposed, and the one transfer takes place in this State, the statute is internally consistent. See *Goldberg v. Sweet,* 488 U.S. at 261, 109 S.Ct. at 588, where the Court explained that the tax was internally consistent since only one State could impose the tax at issue therein.

▮▮▮ For a tax to be externally consistent, a tax must be designed so as to tax only that portion of the revenues from the interstate activity which reasonably reflect the in-state portion of the activity being taxed. *Container Corp.,* 463 U.S., at 169–170, 103 S.Ct. at 2942; *Goldberg v. Sweet,* 488 U.S. at 262, 109 S.Ct. at 589. In this case the transfer of the property for valuable consideration occurred in Oklahoma. That transaction is the only activity taxed. Thus, the external consistency test is also passed. See *Goldberg v. Sweet, supra,* where the Court explained that a tax that had "many of the characteristics of a sales tax" passed the external consistency test.

## (C) DOES THE SALES TAX DISCRIMINATE AGAINST INTERSTATE COMMERCE?

▮▮▮ The third prong of the *Complete Auto* test is whether the Oklahoma Sales Tax discriminates against interstate commerce. *Complete Auto,* 430 U.S. at 279, 97 S.Ct. at 1079. Koch does not argue that Oklahoma's statute *imposing* the sales tax discriminates against interstate commerce; instead it asserts that 68 O.S.Supp.1983 § 1359(E) so discriminates because it provides an *exemption* to the tax for a category of in-state manufacturer/sellers.[13] Section 1359(E) states an exemption for:

Sale of tangible personal property *manufactured in Oklahoma* when sold by the manufacturer to a person who transports it to another state for immediate and exclusive use in some other state. (emphasis added)

▮▮▮ The Commerce Clause limits the power of States to discriminate against interstate commerce. *New Energy Co. of Indiana v. Limbach,* 486 U.S. 269, 273, 108 S.Ct. 1803, 1807, 100 L.Ed.2d 302 (1988); *Hughes v. Oklahoma,* 441 U.S. 322, 99 S.Ct. 1727, 60 L.Ed.2d 250 (1979). The United States Supreme Court has determined that a State taxing scheme may not discriminate against interstate commerce by providing a direct commercial advantage to local business at the expense of out-of-state business. *Armco Inc. v. Hardesty,* 467 U.S. 638, 642, 104 S.Ct. 2620, 2622, 81 L.Ed.2d 540 (1984); *Boston Stock Exchange v. State Tax Commission,* 429 U.S. 318, 329, 97 S.Ct. 599, 606, 50 L.Ed.2d 514 (1977); *Northwestern States Portland Cement Co. v. Minnesota,* 358 U.S. 450, 458, 79 S.Ct. 357, 362, 3 L.Ed.2d 421 (1959). The Court has explained that "Under our consistent course of decisions in recent years a state tax that favors in-state business over out-of-state business for no other

---

**12.** A similar issue was raised in *IBM v. Oklahoma Tax Commission,* 853 P.2d 770 (Okla. 1993) where we noted that a sale within the State was subject to sales tax. The Commerce Clause was not properly before the court in *IBM* and thus does not control our analysis.

**13.** At the time the sales in question occurred, the Section under discussion appeared at 68 O.S.Supp.1983 § 1359(E). Under current law, the provision appears at 68 O.S.Supp.1992 § 1359(F). The renumbering was done in 1988.

reason than the location of its business is prohibited by the Commerce Clause." *American Trucking Associations, Inc. v. Scheiner*, 483 U.S. 266, 286, 107 S.Ct. 2829, 2841, 97 L.Ed.2d 226 (1987). Thus, a state may not impose a tax that is based upon the geographical location of manufacture unless the tax is a compensating tax where interstate commerce is given equal treatment. *Tyler Pipe Industries, Inc. v. Washington Department of Revenue*, 483 U.S. 232, 243–244, 107 S.Ct. 2810, 2817–2818, 97 L.Ed.2d 199 (1987). These principles apply equally to a state tax exemption that discriminates against out-of-state goods. *Bacchus Imports, Ltd. v. Dias*, 468 U.S. 263, 268, 104 S.Ct. 3049, 3053, 82 L.Ed.2d 200 (1984); *Armco Inc. v. Hardesty*, 467 U.S. 638, 642, 104 S.Ct. 2620, 2622, 81 L.Ed.2d 540 (1984).

The Tax Commission argues that no discrimination occurred because the sales tax rate is the same for in-state and out-of-state vendors.[14] This argument would have some merit if the issue was discrimination in the rate. But that is not the issue. The issue is whether the tax itself is discriminatory by virtue of a discriminatory exemption. The Commission has presented no evidence nor cited any administrative interpretation by the Commission of § 1359(E) that would allow the exemption to both in-state manufacturers and out-of-state manufacturers selling goods in Oklahoma that are then transported to a non-Oklahoma destination.

The statute facially exempts the sale of goods from a sales tax when title or possession is transferred in Oklahoma *if the goods are manufactured in Oklahoma* and transported to another state. Goods manufactured in other states, brought to Oklahoma and sold, and then transported to another state for use or resale by the buyer do not receive the same treatment as goods manufactured in Oklahoma.

In *Armco Inc. v. Hardesty*, 467 U.S. 638, 104 S.Ct. 2620, 81 L.Ed.2d 540 (1984) the Court described the exemption from a gross receipts tax thusly:

> The tax provides that two companies selling tangible property at wholesale in West Virginia will be treated differently depending upon whether the taxpayer conducts manufacturing in the State or out of it. Thus, if the property was manufactured in the State, no tax on the sale is imposed. If the property was manufactured out of the State and imported for sale, a tax of .027% is imposed on the sale price.

*Id.*, 467 U.S. at 642, 104 S.Ct. at 2622. The Court then disallowed the tax, determining that it discriminated against interstate commerce by exempting local manufacturers. *Id.*, 467 U.S. at 646, 104 S.Ct. at 2624. This holding was later cited with approval in *Tyler Pipe Industries, Inc. v. Washington Department of Revenue*, 483 U.S. 232, 107 S.Ct. 2810, 97 L.Ed.2d 199 (1987). We have recently written that a state tax cannot discriminate against interstate commerce. *Private Truck Council of America, Inc. v. Oklahoma Tax Commission*, 806 P.2d 598, 604 (Okla.1990), *reversed on other grounds*, *National Private Truck Council of America, Inc. v. Oklahoma Tax Commission*, —— U.S. ——, 111 S.Ct. 2882, 115 L.Ed.2d 1048 (1991). Clearly, 68 O.S.Supp.1983 § 1359(E) discriminates against an out-of-state manufacturer who brings goods into Oklahoma and then sells those goods to a buyer who takes the goods out-of-state. This statute violates the Commerce Clause and saves Koch from paying the sales taxes at issue *in this controversy*. *Dennis v. Higgins*, 498 U.S. 439, 447, 111 S.Ct. 865, 871, 112 L.Ed.2d 969 (1991); *McKesson v. Division of Alcoholic Beverages*, 496 U.S. 18, 39–40, 110 S.Ct. 2238, 110 L.Ed.2d 17 (1990).

### (D) IS THE ACTIVITY TAXED FAIRLY RELATED TO SERVICES PROVIDED BY THE STATE?

▮ The fourth prong of the *Complete Auto* test is whether the activity is fairly

---

**14.** The Tax Commission Order appealed from also determined that Koch did not show sufficient evidence that it manufactured the oil sold to Burlington Northern, and used this finding as an alternate ground to deny Koch relief. The Commission has not briefed this issue, and we deem it abandoned. *Hobson v. Hall*, 267 P.2d 611 (Okla.1954).

related to services provided by the state. We recently addressed the scope of the fourth prong in *Cities Service Gas Co. v. Oklahoma Tax Com'n*, 774 P.2d 468 (Okla. 1989). In that case we dealt with the sale of natural gas instead of fuel oil. In discussing the scope of the fourth test, we stated that "[t]he tax need not reimburse the state for the cost of specific services dispensed to the natural gas industry." *Cities Service* at 475. This could be said of the industry in this case.

Analysis of this issue is hindered by the state of the record in this case. In *Commonwealth Edison Co. v. Montana*, 453 U.S. 609, 101 S.Ct. 2946, 69 L.Ed.2d 884 (1981) the Court explained that a fairly related tax is based upon the "activities or presence of the taxpayer in the State that may properly be made to bear a 'just share of state tax burden.'" *Id.*, 453 U.S. at 626, 101 S.Ct. at 2958. The benefits are not necessarily linked to the particular activity taxed, and the Court has mentioned "police and fire protection, the use of public roads and mass transit, and the other advantages of a civilized society...." *Goldberg v. Sweet*, 488 U.S. at 267, 109 S.Ct. at 592.

The extent of Koch's activities within the State of Oklahoma do not appear as part of the record herein. Koch argues in its appellate brief that "the Commission found no presence in Oklahoma by either Koch or BN [Burlington Northern] other than that they were licensed to do business within the State." But no such finding appears in those adopted and incorporated by reference in the Commission Order, O.R. at 249–254. The Commission did state that:

> Both the seller, Koch Fuels, and the buyer, BN, are licensed to do business in Oklahoma. In doing business in this state both enjoy the protection and services of this state.... The presence of the parties to the transaction and the transaction itself provide more than suf-

ficient minimum contacts with the state to justify imposition of the tax.

O.R. at 259.

Nowhere does the Commission find that their *only* presence in the State is by virtue of the seller's and buyer's licenses to do business in the State.[15] The conclusions of the Commission incorporated into the Order also state that "the parties to this transaction both conduct business in this state and receive the benefits provided by Oklahoma." O.R. at 262, Findings, Conclusions and Recommendations of Administrative Law Judge, incorporated by reference in Commission Order 90–06–07–028, O.R. at 249. Koch had the burden of establishing the lack of a sufficient presence in the State to challenge the tax under the fourth prong of *Complete Auto*. Koch called two of its employees to testify, and neither discussed the extent of Koch's operations in Oklahoma. It did not provide a record to this Court showing a lack of services provided by the state fairly related to the taxpayer and the activity taxed. Thus, Koch's argument on the fourth prong of *Complete Auto* fails.

## SUMMARY

The Sales Tax Code provision at 68 O.S.Supp.1983 § 1359(E) discriminates against Koch. That discriminatory statute is herein ruled unconstitutional. As an unconstitutional statute it may confer no right to an exemption after our pronouncement today, *Ethics Commission of the State of Oklahoma v. Cullison*, 850 P.2d 1069, 1079 (Okla.1993), and the Tax Commission cannot hereafter enforce it. *Branch Trucking v. Oklahoma Tax Commission*, 801 P.2d 686, 690–691 (Okla.1990). Thus the discriminatory component in the enforcement of the Sales Tax Code is removed, and is no longer an impediment to imposition of the sales tax to this type of sale. Koch's Commerce Clause challenge to the tax is sustained, but only on this one ground. Order No. 90–06–07–028 of the

---

**15.** Such a finding would indeed be noteworthy as to Burlington Northern. See *Burlington Northern R. Co. v. Oklahoma Tax Commission*, 481 U.S. 454, 459–460, 107 S.Ct. 1855, 1858–59, 95 L.Ed.2d 404 (1987) where the taxpayer argued that for the 1982 tax year the value of its property was 1.5 billion and that 3.53% of this property was taxable in the State of Oklahoma.

Tax Commission is reversed and the cause is remanded to the Tax Commission.

LAVENDER, V.C.J., and SIMMS, KAUGER and WATT, JJ., concur.

HARGRAVE and OPALA, JJ., concur in part; dissent in part.

HODGES, C.J., and ALMA WILSON, J., dissent.