UNITED DESIGN CORPORATION, Gary N. Clinton, Jean Macy Clinton, and Robert M. Clinton, Appellants,

v.

STATE of Oklahoma ex rel. OKLAHOMA TAX COMMISSION, Appellee.

No. 83438.

Supreme Court of Oklahoma.

March 18, 1997.

As Corrected June 19, 1997.

Order Denying Rehearing July 15, 1997.

Cathy C. Barnum, Noble, Philip D. Hart, James Dudley Hyde, McAfee & Taft, Oklahoma City, for Appellants.

David Hudson, General Counsel, Dorothy Lindsey Brown, Assistant General Counsel, Oklahoma Tax Commission, Oklahoma City, for Appellee.

HODGES, Justice.

The issues in this appeal primarily concern what constitutes the process of manufacturing for purposes of the manufacturer's exemption from sales and use tax found at section 1359 of title 68 of the Oklahoma Statutes. Because this matter was decided under an incorrect view of the manufacturing process involved, it is remanded to the Oklahoma Tax Commission for further proceedings. In addition, the Oklahoma Tax Commission is instructed to implement today's holdings concerning the other tax assessment issues discussed herein.

United Design Corporation (United) is an Oklahoma corporation, headquartered in Noble, Oklahoma. United's business consists of the design, manufacture, and sale of gift figurines. United then markets its products primarily through retail outlets which purchase the products for resale or for exclusive use. Over 98 percent of United's sales are to purchasers out of state.

In June, 1990, the Business Tax Division of the Oklahoma Tax Commission (Commission) began an audit of United's books. Based on the audit, the Commission assessed use and sales tax against United for the audit period June 1, 1987, through May 31, 1990. United protested the tax assessment alleging that the Commission's Business Tax Division had erroneously proposed much of the assessment due to improper interpretation of existing manufacturing and business exemption provisions.

An administrative law judge held an evidentiary hearing on United's protest. On June 12, 1992, she issued her findings and conclusions and recommended that United's protest be denied in part and granted in part. The Commission adopted the administrative law judge's findings, conclusions, and recommendations in their entirety on March 24, 1994. United appealed that decision. The Court of Civil Appeals affirmed the Commission in part, reversed in part, and remanded the case for further proceedings. This Court granted certiorari review based on the petitions of both United and the Commission.

## I. THE MANUFACTURERS' EXEMPTION FROM SALES AND USE TAX

United employs sculptors who fashion prototypes out of clay, from which a master mold is made. Production molds are made from the master mold, and figurines are then made by pouring material into the molds. After the figurines are cast, the manufacturing process involves a number of steps to refine the castings, followed by painting or glazing and affixing eyes. They are then packaged and readied for shipment.

The Commission assessed a deficiency, asserting that United had improperly interpreted the manufacturers' exemption provisions for sales and use tax. In the view of the Commission, the manufacturing process began with the creation of the production molds, and ended with the gluing of eyes onto the figurines. The Commission thus excluded all of the steps beginning with design and development, the creation of the prototype sculpture, and the making of the master mold. The Commission also excluded from the manufacturing process anything to do with packaging, warehousing, and shipping. The Commission was unmoved by United's argument that the manufacturing process began with the sculptor's development of the prototype figurine. Equally unsuccessful was United's claim, supported by uncontroverted evidence, that the post-production packaging operations were critical

steps in the manufacturing process which were entitled to exception under the statute.

The Court of Civil Appeals decided that the Commission should not have fixed the beginning of the manufacturing process with the creation of the production molds, but rather should have determined that the process began with creation of the master molds. It also determined, however, that the Commission was correct in excluding packaging and shipping from the manufacturing process.

United notes that the Commission did not have the opportunity to consider the impact of *Schulte Oil Co. v. Oklahoma Tax Commission*, 882 P.2d 65 (Okla.1994), on its assessment of United's manufacturing operation. *Schulte* was promulgated while this matter was on appeal.

One issue in *Schulte* was the Commission's application of the manufacturers' exemption from sales tax found at section 1359 of title 68 and Commission Rule 13.013.23 which construes that statute. Section 1359(1) exempts "[g]oods, wares, merchandise, and property purchased for the purpose of being used or consumed in the process of manufacturing." Section 1359(3) exempts machinery and equipment "directly used in" the manufacturing process. In 1992, the statute was amended to exempt packaging materials sold to a manufacturer, *id.* at § 1359(K) (Supp.1992), but the provision was not in effect at the time of the challenged assessment.

United's appeal, like that in *Schulte*, challenges the view taken by the Commission as to what operations constitute the process of manufacturing. The *Schulte* opinion reasoned that "[t]he § 1359 sales tax exemption should receive a practical construction—one that would not allow a manufacturing operation that is in fact but one continuous and integrated production process to be chopped up into discrete segments." 882 P.2d at 74. The exemption applies to all items "necessary to the production of a finished product." *Id.* *Schulte* determined that diesel fuel for forklifts used to move pipe was part of the

pipe remanufacturing process. Thus, it was exempt from the motor fuel sales tax. *Id.* at 75. *Schulte* was applied to all cases pending in the administrative or appellate litigation pipeline. *Id.*

In this matter, the Commission excluded certain operations from its view of United's manufacturing process. These included the development of the sculptures and master molds from those sculptures, as well as all packaging and warehousing of the figurines. The Commission excluded these operations despite United's uncontroverted evidence at hearing that they were critical steps in its manufacturing process.

The Commission's truncated view of the manufacturing process, expanded slightly by the Court of Civil Appeals, is contrary to the letter and spirit of this Court's decision in *Schulte*. United's manufacturing operation is one integrated production process. That process includes any necessary adjunct to production. It also includes putting the product into marketable form.[1] This matter must be remanded so that the Commission may view United's manufacturing process in a manner consistent with *Schulte*.

## II. UNITED'S CLAIM TO MANUFACTURERS' EXEMPTION FOR PRODUCTION OF ITS CATALOGS

■■■■ United uses catalogs in marketing its products. In producing its catalogs, United's in house catalog production staff sets up products for photography, writes copy, crops photos, and lays out the pages. United uses outside contractors for photography, photo color separation, typesetting, and printing. All outside work is closely supervised by United's staff.

The Commission and the Court of Civil Appeals found that United did not manufacture its catalogs. They reasoned that United's participation in the catalog production process was merely supervisory and refused to apply the manufacturers' exemption to purchases United made in producing cata-

---

1. This holding eliminates any need to address United's request that the 1992 amendment to section 1359 of title 68, which added an exemption for sales of packaging materials to a manufacturer, *see* Okla.Stat. tit. 68, § 1359(11) (Supp. 1996), be applied retroactively to the assessment period.

logs. The same holding was applied to posters, books, gift bags, and other graphic arts products United produced.

*Schulte's* call for a "practical construction" of the manufacturers' exemption applies to United's production of its catalogs and other graphic arts products. *See* 882 P.2d at 74. A practical construction requires that manufacturing include not only the production of a "core" product or products, but also related products. As *Schulte* noted, "[t]he ultimate purpose of the manufacturer's exemption is to enhance this state's competitive position in inducing industries to locate and expand in Oklahoma." Limiting "manufacturing" to the production of a core product does not further that goal. Nothing in the manufacturers' exemption granted by the Oklahoma Legislature requires or implies such a restrictive definition of manufacturing. United's manufacturing operations include catalog and graphic art production.

Nor was United's status as a manufacturer defeated by the fact that certain specialized tasks were performed by outside contractors. The Commission's Rule 13.013.23 specifically provides that "[o]perations performed by a sub-contractor to the manufacture may qualify as a manufacturing operation if the contractor is performing sub-assembly work leading to completion of the finished product." The rule describes precisely United's production of its catalogs and graphic arts products. United was entitled to the manufactures' exemption on those items.

### III. UNITED'S CLAIM FOR SALES OF DISPLAY ITEMS

■ The Commission's audit included a number of items which United sold to customers to display United's products. The administrative law judge determined that United's purchase of display items it then sold its customers were tax exempt pur-

chases under section 1357(c) of title 68 (now section 1357(3)), the sale-for-resale exemption. The administrative law judge went on to conclude, however, that United was under a duty to charge, collect, and report sales tax on its sale of the display items to its customers.

On appeal, United asserted it was not under a duty to collect tax on the sale of the display items to its customers in other states. It argued that section 1359(f) of title 68 (now section 1359(6)) exempts manufacturers' "[s]ale of personal property manufactured in Oklahoma when sold to a person who transports it to another state for immediate and exclusive use in some other state." The Court of Civil Appeals held that United had failed to carry its burden of showing entitlement to the exemption.[2] Specifically, that court noted that the first requirement of the exemption had not been met, namely, that the items sold be manufactured in Oklahoma.

The invoices at issue were from out-of-state suppliers. Thus, the conclusion reached by the Commission and the Court of Civil Appeals was correct. United's sale of the display items did not qualify for the exemption.

### IV. UNITED'S CLAIM FOR REFUND FOR COMPUTER PROGRAMMING SERVICES

■ United sought a refund from the Commission of taxes it believes it mistakenly paid for what it terms "custom programming." Resolution of this issue rests on how the programming services are categorized.

Section 1354(H) of title 68 levies sales tax on "computer hardware, software, coding sheets, cards, magnetic tapes or other media on which prewritten programs have been

---

**2.** That court failed to note, however, that the statute had been declared unconstitutional by this Court a year and one half earlier in *Koch Fuels v. State ex rel. Oklahoma Tax Commission,* 862 P.2d 471 (Okla.1993).

In *Koch,* the provision (cited as section 1359(e) in *Koch* ) was held to violate the Commerce Clause of the United States Constitution by discriminating between in-state and out-of-state

manufacturers. *Id.* at 480. Thus, as *Koch* observed, that provision conferred no right to an exemption to any manufacturer after the pronouncement of its unconstitutionality. *Id.* at 481. Today's holding on this issue obviates any need to examine what effect the provision might have had on this assessment period which predated the pronouncement of unconstitutionality.

coded, or otherwise recorded, including the gross receipts from the licensing of software programs." The Commission Regulation 13–16 [3] creates three categorizes of computer software: 1) prewritten or "canned" programs which are simply loaded onto a customer's equipment, 2) "programming changes to a prewritten program to adapt it to a customer's equipment," and 3) custom programs "prepared to the special order of a customer."

Canned programs and programming changes are taxed under the regulation while custom programs are not. The administrative law judge found that the taxes for which United sought a refund were collected on changes made to modify and adapt prewritten programs to United's needs, thus making those changes taxable.

Evidence was presented at hearing to support the judge's finding. By United's own admission, the charges were for "customization and/or modification programming services." United, however, took the view that those services were not subject to sales or use tax. United's view is contrary to the text of Regulation 13–16 which taxes "programming changes to a prewritten program." The administrative law judge's finding concerning this issue will not be disturbed.

**3.** Regulation 13–16 COMPUTERS AND RELATED SYSTEMS

    A. Computer "hardware" is defined as the machine with all of its components. The sale to a consumer of a computer and its related components is taxable when delivered to a customer in this state. The rental of a computer and its related components, including terminal equipment (hardware) which is physically located in this state is taxable.

    B. Computer "software" is defined as the programming needed to make computers operate.

Prewritten (canned) programs are programs prepared, held, or existing for general or repeated, use, including programs developed for in-house use and subsequently held or offered for sale or lease. The programs may be transferred to the customer in the form of punched cards, data or magnetic tape, or by listing the program instructions on coding sheets. In some cases they are usable as written, however, in most cases it is necessary that the program [be] modified, adapted, and tested to meet the customer's particular needs. Sales tax applies to the sale of tangible personal property, including coding sheets, cards or magnetic tape, on which or into [sic] which such prewritten (canned) programs have been coded, punched or otherwise recorded.

Sales tax applies whether title to the tape or other property upon which the program is coded, punched or otherwise recorded passes to the customer, or the program is recorded on tape or other property furnished by the customer. The temporary transfer of possession of a program for a consideration for the purpose of direct use or to be recorded by the customer, is a lease of tangible personal property and the tax applies unless the property is leased in substantially the same form as acquired by the lessor and the lessor has paid sales tax or use tax with respect to the property.

Sales tax applies to the entire amount charged to the customer. Where the consideration consists of license fees or royalty payments, all license fees or royalty payments, present or future, whether for a period of minimum use or for extended periods, are includable in the measure of tax.

Programming changes to a prewritten program to adapt it to a customer's equipment, including translating a program to a language compatible with a customer's equipment, are in the nature of fabrication or services and are part of a sale and thus are taxable.

Charges for assembler, compiler, utility, and other prewritten programs provided to those who lease or purchase automatic data processing equipment are subject to tax whether the charges are billed separately or are included in the lease or purchase price of the equipment. The transfer of a program developed through modification of an existing prewritten program to meet a customer's specified need is in the nature of customized programming as discussed below, if the charge for the program, as modified, is substantially greater than the charge for the existing prewritten program and if the charges for the service of modifying the program is stated separately from the charge for the rewritten program.

Custom programs are programs prepared to the special order of a customer. This type of program is classified as intangible personal property and is not subject to tax.

EXAMPLE 1: The sale of computer video game programs used to operate computers, video games, is the sale of tangible personal property and is subject to tax.

EXAMPLE 2: Computer software programs used to operate business computers, personal computers, word processors, display writers, and other similar hardware are considered the sale of tangible personal property and subject to tax.

V. UNITED'S CLAIM OF ERROR IN ASSESSMENT OF USE TAX WITHOUT DEDUCTION FOR DISCOUNTS

■ This dispute centers on whether a use tax assessment on sales from out-of-state vendors is to be based on the amount United actually paid or to be based on the contract price. Evidence presented to the administrative law judge demonstrated that United routinely pays a discounted amount on purchases if it pays "early." United urged that it was error for the Commission not to base the amount of use tax on the discounted amount it actually paid.

Section 1402 of title 68 assesses a use tax on out-of-state purchases at a percentage of the "purchase price" of the property. The term "purchase price" is defined at section 1401 as "the consideration paid or given *or* contracted to be paid or given by any person to the seller of an article of tangible personal property for the article purchased." (emphasis added) In contrast, sales tax is assessed under section 1354(1) of title 68 on in-state purchases at a percentage "of the gross receipts or gross proceeds of each sale." Section 1352(g)(3) defines "gross receipts" or "gross proceeds" to include "[a]ny amount for which credit or a discount is allowed by the vendor."

United argues that the clear text of the use tax provision found at section 1401 defines "purchase price" in the disjunctive as either the amount actually paid or the contract price. The Commission argues that the provision must be construed to complement the sales tax provisions. It is concerned that "[i]f early payment discounts were included in gross receipts for purposes of sales tax, but not included [in "purchase price"] for purposes of use tax, purchasers of out-of-state inventory would gain a competitive advantage over purchasers of in-state inventory."

■ While the Commission expresses a legitimate concern, that concern should be addressed to the legislative branch of our state's government. This Court's function in applying a statute is to ascertain legislative intent and construe the statute only if intent is not clear from its text. *See Cooper v.* *State ex rel. Dept. of Public Safety,* 917 P.2d 466 (Okla.1996). Here the text of the statute clearly defines "purchase price" as either the contract price or the actual amount paid. This Court must decline the Commissions invitation to rewrite the use tax provision so that it mirrors the sales tax provisions. The Court of Civil Appeals reached the correct conclusion on this issue. The Commission is directed to adjust its assessment of use tax to eliminate use taxes imposed on discounts taken by United.

### Summary and Instructions

The holdings of the Commission concerning United's tax assessment were made without the benefit of this Court's pronouncement in *Schulte.* Thus, its view of what constituted United's manufacturing process was not in accord with the holdings of that decision. This matter is remanded to the Commission for application of the manufacturers' exemption to United's manufacturing process as described herein. That holding of today's pronouncement must also be applied to United's manufacture of its catalogs and graphic arts products. In addition, the Commission must recalculate the use tax on any out-of-state purchases for which it failed to base such tax on the actual amount paid. Further, the Commission was correct in concluding that United was under a duty to collect tax on the sale of display items to its customers in other states. Finally, United's request for a refund from the Commission of taxes paid on programming changes made to modify and adapt prewritten programs to its equipment was properly denied.

CERTIORARI PREVIOUSLY GRANTED; OPINION OF COURT OF CIVIL APPEALS VACATED; ORDER OF OKLAHOMA TAX COMMISSION AFFIRMED IN PART, REVERSED IN PART; CAUSE REMANDED TO TAX COMMISSION WITH INSTRUCTIONS.

KAUGER, C.J., and LAVENDER and WATT, JJ., concur.

SUMMERS, V.C.J., concurs in parts I, III, V and IV; dissents from part II.

OPALA, J., concurs in parts I, II, III and V; dissents from IV.

WILSON and SIMMS, JJ., concur in part; dissent in part.

HARGRAVE, J., not participating.

### ORDER

Appellee's petition for rehearing denied.

PART I VOTE: KAUGER, C.J., SUMMERS, V.C.J., and HODGES, LAVENDER, SIMMS, OPALA, WILSON and WATT, JJ., concur.

HARGRAVE, J., not participating.

PART II VOTE: KAUGER, C.J., and HODGES, LAVENDER, OPALA and WATT, JJ., concur.

SUMMERS, V.C.J., and SIMMS and WILSON, JJ., dissent.

HARGRAVE, J., not participating.

PART III VOTE: KAUGER, C.J., SUMMERS, V.C.J., and HODGES, LAVENDER, SIMMS, OPALA, WILSON and WATT, JJ., concur.

HARGRAVE, J., not participating.

PART IV VOTE: KAUGER, C.J., SUMMERS, V.C.J., and HODGES, LAVENDER and WATT, JJ., concur.

SIMMS, OPALA and WILSON, JJ., dissent.

HARGRAVE, J., not participating.

PART V VOTE: KAUGER, C.J., SUMMERS, V.C.J., and HODGES, LAVENDER, OPALA and WATT, JJ., concur.

SIMMS and WILSON, JJ., dissent.

HARGRAVE, J., not participating.

SIMMS, Justice, dissenting:

¶ 1  I dissent to Part II of the majority opinion.

¶ 2  United's catalog production is an integral part of its marketing effort. However, neither 68 O.S. § 1359, nor this Court's opinion in *Schulte Oil Co. v. Oklahoma Tax Comm'n*, 882 P.2d 65 (Okl.1994), permit an expansion of the manufacturer's tax exemption to encompass United's particular marketing activity in the instant case. One of the stated requirements of 68 O.S. § 1359 is that the manufactured goods are items for sale or resale. See 68 O.S. § 1359(A). There is little evidence in the record regarding the sale of the catalogs, with the only references in this regard being that the catalogs were given away, or occasionally sold at a nominal cost. While there may be evidence that United does manufacture its catalogs, the additional requirement that the product be prepared for sale or resale is completely lacking with reference to the catalog production. Because the catalog production is unable to stand as a manufactured product in its own right, the catalog production must fit within the manufacturing parameters of the gift figurine line for United to avail itself of the tax exemptions of § 1359.

¶ 3  The marketing and post-production nature of the catalog itself does not fit within the parameters of the manufacturing definition provided under the Sales Tax Code, 69 O.S. § 1352(H).

> "Manufacturing" means and includes every operation commencing with the first production stage of any article of tangible personal property and ending with the completion of tangible personal property having the physical properties which it has when transferred by the manufacturer to another.

¶ 4  All the physical properties which the figurines have when transferred from United to its customers exist without regard to the catalog production and as such the catalog production falls outside United's figurine manufacturing activities and outside the exemptions of § 1359. The physical properties of the figurines are complete regardless whether a catalog accompanies the shipment.

¶ 5  To the degree that United's Oklahoma based graphic art production is used to create related gift products for sale, such as books, posters and other gift items, United can be considered a manufacturer of this related line of products and this production

would stand as a manufactured product in its own right. It is the separate marketing nature of the catalogs and the fact that they are not created for sale or resale that prevents United from shrouding its manufacturer's status over every enterprise in which it endeavors.

¶ 6 United was not entitled to the manufacturer's exemption for those items relating to its catalog production. However, United was entitled to the manufacturer's exemption for graphic art production of the related gift products that were manufactured for sale or resale, pursuant to the dictates of 68 O.S. § 1359(A).

¶ 7 I dissent to Part IV and to the Summary and Instructions of the majority opinion, as well.

¶ 8 I am authorized to state that Vice Chief Justice Summers joins me in the views expressed in the dissent to Part II of the majority opinion.